MICHAEL HORNYAK, PLAINTIFF-APPELLANT, v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY, DEFENDANT-RESPONDENT.

Argued February 20, 1973—Decided May 21, 1973.

*Mrs. Ruth Rabstein* argued the cause for appellant (*Messrs. Pellettieri & Rabstein,* attorneys).

*Mr. Thomas J. Mannion, Jr.* argued the cause for respondent (*Messrs. Capehart & Scatchard,* attorneys).

The opinion of the Court was delivered by

JACOBS, J. The Appellate Division, in an unreported opinion, affirmed the denial of a workmen's compensation award to the plaintiff; we certified on his application. 62 *N. J.* 188 (1972).

The plaintiff was employed as a shipper in the respondent's distribution warehouse at Cedar Lane, Florence, New Jersey. His working hours were from 9:30 P.M. until 6 or 7 A.M., with two coffee breaks of 15 minutes each and a half hour lunch period from 1:30 to 2 A.M. He had to check in when entering the premises at 9:30 P.M. and check out when leaving the premises at 6 or 7 A.M.; but he did not have to check out when he left the premises for lunch or check in when he returned. Although there was a lunchroom at the premises, no food was available there. Normally about 20 or 25 employees would bring their own lunch and eat in the lunchroom where drinks could be obtained from vending machines. Most of the 85 or so employees would customarily leave the premises and have lunch in nearby Bordentown or Burlington eating places. The supervisory employees knew of this practice and there had never been any suggestion that it was not permissible.

On December 14, 1968 the plaintiff went to the Burlington diner during his 1:30–2 A.M. lunch hour. The diner is located about six miles south of the warehouse on Route 130 and was, at that time of night, the nearest place to eat. The plaintiff had his lunch and was in the course of returning to the warehouse. When he was about two and a half blocks away, at about 1:55 A.M., his car was involved in an accident. He was seriously injured, was taken to the Rancocas Valley Hospital where he remained for a week, and was later treated by several physicians. In due course he filed a claim petition for compensation in the Department of Labor and Industry, Division of Workmen's Compensation. The Division dismissed the petition under the judge-made "going and coming" rule which has often precluded employees from obtaining compensation for injuries suffered

by them on their way to and from work. See *Moosebrugger v. Prospect Presbyterian Church,* 12 *N. J.* 212, 214 (1953); 1 *Larson, The Law of Workmen's Compensation* § 15 (1972); 8 *Schneider, Workmen's Compensation Text* § 1710 (1951). The Division took the position that "when the employee is given time off to leave the premises to have his meals, logic supports the holding that an injury during that interval does not arise out of and in the course of employment." This position was adhered to in the County Court which affirmed the dismissal of the complaint. The Appellate Division affirmed the County Court's judgment in a *per curiam* reading as follows:

The most recent determinations by our Supreme Court hold to the proposition that, although subject to various exceptions, as well as some criticisms, the "coming and going" rule is still in effect in this State. *Bergman v. Parnes Brothers, Inc.,* 58 *N. J.* 559 (1971); *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970). In view of the fact that the circumstances attending the injury of this petitioner do not fall within any of the recognized exceptions to the rule [including *Jones v. Continental Electric Co.,* 75 *N. J. Super.* 76 (App. Div. 1962), certif. den. 38 *N. J.* 312 (1962)], he is not entitled to compensation.

Our Workmen's Compensation Act (*N. J. S. A.* 34:15–1 *et seq.*) is humane social legislation designed to place the cost of work-connected injury on the employer who may readily provide for it as an operating expense. The Act sets forth that compensation shall be paid for death or injury by accident arising out of and in the course of the employment. *N. J. S. A.* 34:15–7. Shortly after its original passage the former Supreme Court noted that an accident arises out of the employment if it results from a risk "reasonably incidental" thereto and that it arises in the course of the employment "if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." *Bryant, Adm'x. v. Fissell,* 84 *N. J. L.* 72, 77, 78 (*Sup. Ct.* 1913). Later cases have expressed the same

thoughts in similar terminology. See, *e. g., Belyus v. Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43, 47 (*Sup. Ct.* 1935), *aff'd,* 116 *N. J. L.* 92 (*E. & A.* 1936); *Beh v. Breeze Corporation,* 2 *N. J.* 279, 282 (1949); *Secor v. Penn Service Garage,* 19 *N. J.* 315, 320 (1955); *Tocci v. Tessler & Weiss, Inc.,* 28 *N. J.* 582, 586 (1959). And very recently this Court, stressing the liberal legislative intent to have the employer's enterprise "absorb the injuries reasonably related to it", expansively construed the statutory language to apply to an injury not actually inflicted until after termination of the employment but the cause of which admittedly originated in the employment. See *Thornton v. Chamberlain Manufacturing Corp.,* 62 *N. J.* 235, 242 (1973).

At no point has the Legislature altered the sweeping generality of the statutory terms and it has consistently left their definition and application to the courts. They, in turn, have conscientiously sought to evolve liberally just lines between those accidental injuries which may fairly be said to have some work connection and those which may fairly be said to be unrelated to the employment. Right from the start it was understood that it was not necessary that the employee actually be working at his machine or elsewhere within his employer's premises to satisfy the statutory formula. See *Blovelt v. Sawyer,* [1904] 1 *K. B.* 271; *Rowland v. Wright,* [1909] 1 *K. B.* 963; *Hanna v. Erie Railroad Co.,* 8 *N. J. Misc.* 829 (*Sup. Ct.* 1930); *cf. Waskevitz v. Clifton Paper Board Co.,* 7 *N. J. Super.* 1 (App. Div. 1950); *Crotty v. Driver Harris Co.,* 49 *N. J. Super.* 60 (*App. Div.*), *certif. denied,* 27 *N. J.* 75 (1958); *Jones v. Continental Electric Co., Inc.,* 75 *N. J. Super.* 76 (*App. Div.*), *certif. denied,* 38 *N. J.* 312 (1962). In *Jones* a watchman was killed while crossing the street in front of his employer's plant on the way to a nearby diner where he planned having his midnight lunch; in his opinion holding that the death arose out of and in the course of the employment, Judge Gaulkin cited the settled doctrine that the continuity of the employment is not interrupted by acts of personal comfort such as stopping

work to have a smoke or to get some fresh air and that this "is not limited to acts performed on the employer's premises." 75 *N. J. Super.* at 82; *cf. Zabriskie v. Erie R. R. Co.,* 86 *N. J. L.* 266 (*E. & A.* 1914) .

In *Ricciardi v. Damar Products Co.,* 45 *N. J.* 54 (1965), the employee was injured while returning home from a picnic sponsored by her employer. The picnic was at a place other than the work premises but this was held to be immaterial (45 *N. J.* at 60); similarly, it was held to be immaterial that the employees were free to attend or stay away from the picnic and that no wages were paid for that nonworking day to those who did or did not attend (45 *N. J.* at 59). In response to the employer's contention that the award was barred by the going and coming rule, this Court, speaking through the present Chief Justice, pointed out that the rule was "not free from dispute since travel to and from the place of work quite obviously is essential to the work itself" (45 *N. J.* at 61); and, after noting that the "uneasy footings" of the rule had led to many exceptions, it held that the case before it could justly be brought within one of them. 45 *N. J.* at 61–62. In commenting on *Ricciardi,* the author of the note in 20 *Rutgers L. Rev.* 599 (1966) voiced the thought that "if an employee may recover for injuries sustained on the way to or from a company picnic, from which the employee is free to stay away without financial loss or employer displeasure, it is difficult to conceptualize how a worker may be denied compensation for injuries sustained while going to or from his regular place of work, which he is obliged to attend." 20 *Rutgers L. Rev.* at 617.

In *Hammond v. The Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970), an award was sustained though the injury occurred outside the employer's plant while the employee was en route to a street corner where she was to be picked up by a coemployee for her ride home. The situation was brought within an exception to the going and coming rule but Justice Proctor, in his opinion for this Court, took occasion to express general disapproval of the rule itself. He referred to

it as one which has produced "many harsh results" leading to exceptions so numerous, they have almost "swallowed" the rule. 56 *N. J.* at 11–12. See *Bergman v. Parnes Brothers, Inc.,* 58 *N. J.* 559 (1971); *Williams v. Remco Industries,* 118 *N. J. Super.* 481 *(App. Div.), certif. denied,* 61 *N. J.* 163 (1972); *DiNardo v. Newark Bd. of Ed.,* 118 *N. J. Super.* 536 *(App. Div.* 1972); *Pearce v. N. J. Highway Authority,* 122 *N. J. Super.* 342 *(App. Div.* 1973); *cf. Brousseau v. Blackstone Mills,* 100 *N. H.* 493, 130 *A. 2d* 543 (1957); *Schreifer v. Industrial Accident Commission,* 61 *Cal.* 2d 289, 38 *Cal. Rptr.* 352, 391 *P. 2d* 832 (1964); *Guest v. Workmen's Compensation Appeals Board,* 2 *Cal.* 3d 670, 87 *Cal. Rptr.* 193, 470 *P. 2d* 1 (1970). See also Horovitz, "Worldwide Workmen's Compensation Trends," 59 *Ky. L. J.* 37 (1970), where the author suggests that the time has perhaps come to wipe out the rule rather than to keep increasing the exceptions; he noted that "portal to portal protection is now becoming the statutory or decisional rule in many countries" and that the trip to and from work is often "the most dangerous part of the employee's job" and should justly be covered by the compensation statute. 59 *Ky. L. J.* at 55–56. See *Hammond v. The Great Atlantic & Pacific Tea Co., supra,* 56 *N. J.* at 13; *Hinojosa v. Workmen's Compensation Appeals Board,* 8 Cal. 3d 150, 104 *Cal. Rptr.* 456, 460 n. 5, 501 *P. 2d* 1176, 1180 n. 5 (1972); Horovitz, "Workmen's Compensation: Half Century of Judicial Developments," 41 *Neb. L. Rev.* 1, 49–52 (1961); *Pound, "Comments on Recent Important Workmen's Compensation Cases,"* 15 *NACCA L. J.* 45, 86–87 (1955); *Notes, 7 San Diego L. Rev.* 174 (1970); 21 *Ark. L. Rev.* 414 (1967); 41 *N. D. L. Rev.* 185 (1965).

The New Jersey cases which embraced the going and coming rule undoubtedly recognized that policy rather than logic was the controlling factor and that, in choosing the employer's plant as the place where the work relation began, an artificial line was being drawn. See *Gullo v. American Lead Pencil Co.,* 119 *N. J. L.* 484, 486 *(E. & A.* 1938).

However, in their dissent to *Moosebrugger v. Prospect Presbyterian Church, supra,* 12 *N. J.* 212, three Justices joined in the suggestion that the remedial purposes of the Act might better be furthered by drawing the line antecedently so as to afford compensation coverage on the way to and from work. 12 *N. J.* at 217. Developments since *Moosebrugger* seem to have strengthened the suggestion but a present majority in the Court is unwilling at this time to discard the going and coming rule in its entirety. However, we need not pursue this larger issue since we are satisfied that, in any event, the accidental injury to the plaintiff under the particular circumstances here, arose out of and in the course of his employment and that he was justly entitled to compensation under the Act.

The defendant explicitly acknowledges that if the plaintiff had been injured "during the lunch period while on the employer's premises" his injury would be compensable (*Flanagan v. Charles E. Green & Son,* 121 *N. J. L.* 327, 329–330 *(Sup. Ct.* 1938), *aff'd,* 122 *N. J. L.* 424 *(E. & A.* 1939)); but it contends that when the plaintiff left "the employer's premises for eating purposes" he "elected to abandon his employment and no longer can be considered as being in the course thereof." The suggestion of abandonment is unrealistic. If he went out of the premises for a smoke or breath of air there would admittedly be no abandonment. See *Jones v. Continental Electric Co., Inc., supra,* 75 *N. J. Super.* at 82–83; *Crotty v. Driver Harris Co., supra,* 49 *N. J. Super.* at 69–71; *Waskevitz v. Clifton Paper Board Co., supra,* 7 *N. J. Super.* at 3; *cf. American Motors Corp. v. Industrial Comm.,* 1 *Wis.* 2d 261, 83 *N. W.* 2d 714 (1957); *Whitehurst v. Rainbo Baking Company,* 70 *N. M.* 468, 374 P. 2d 849 (1962). And under persuasive decisions elsewhere there would be no abandonment if he left the premises during one of his 15 minute coffee breaks. See, *e. g., Jordan v. Western Electric Co.,* 1 *Or. App.* 441, 463 *P.* 2d 598 (1970); *Prater v. Indiana Briquetting Corporation,* 253 *Ind.* 83, 251 *N. E.* 2d 810 (1969); *Caporale v. Department of Taxation*

*& Finance*, 2 *A. D. 2d* 91, 153 *N. Y. S. 2d* 738 (1956), *aff'd*, 2 *N. Y. 2d* 946, 162 *N. Y. S. 2d* 40, 142 N. E. 2d 213 (1957); *Dependents of Pacheco v. Orchids of Hawaii, Hawaii*, 502 *P. 2d* 1399 (1972); 1 *Larson, supra* at § 15.54; *Thornton and McNiece, "Torts,"* 32 *N. Y. U. L. Rev.* 312, 333 (1957). In *Pacheco* Chief Justice Richardson set forth his court's specific holding in the following terms:

> We adopt as a general rule the proposition that an employee, who is allowed to venture off-premises during an authorized work break, and who is injured in the course of reasonable and necessary activity incidental to such break, should be compensated.
>
> A scheduled coffee break serves the dual function of providing an employee a brief respite from his job as well as affording him an opportunity to tend to matters of a personal nature. The former objective has been viewed as a benefit to the employer, because a refreshed employee is often a more productive one. The latter type of activity may or may not directly benefit the employer, but is allowed as a convenience to the employee. An employer may derive substantial benefits from an employee who is allowed time away from the job to accomplish pressing personal business. Injuries occasioned by employees pursuing necessary personal matters off employer's premises are compensable in our view as work-connected, especially if the employer acquiesces in such practices. 502 *P. 2d* at 1401.[k]

In the matter at hand the plaintiff's departure for his lunch was no more an abandonment of his employment than were the departures in the coffee break cases. The plaintiff had only a half hour and there was no hot food to be obtained on the premises. He had to be afforded the oppor-

---

[k] *Cf. Sweet v. Kolosky*, 259 *Minn.* 253, 106 *N. W. 2d* 908 (1960): "No rational basis exists for distinguishing between an injury which occurs while an employee is going to or coming from a lunch counter maintained on the employer's premises and an injury which occurs while employee is exercising the same right but where it is necessary to leave the premises in order to reach facilities at which the right may be exercised. Coffee breaks and other rest periods have now become so common in employment contracts that it must be held, at least where the rights to such intervals are made a part of the employment agreement, that they are incidental to the employment and that, while exercising such rights, the employee remains within the scope of employment." 106 *N. W. 2d* at 910.

tunity of eating and, while hot food was a matter of his own choice, obtaining it not only convenienced him but was also geared towards increasing his efficiency which was clearly in his employer's interest. In *Bollard v. Engel,* 254 *App. Div.* 162, 4 *N. Y. S. 2d* 363, *aff'd,* 278 *N. Y.* 463, 17 *N. E. 2d* 130 (1938), Justice Heffernan sustained an award for an injury suffered by an employee returning to work after a quick supper in a restaurant near his employer's premises; he aptly noted that it would be too technical to say "that a pause in the actual course of his work by an employee for the purpose of eating is a break in his employment from the time he stops work to the time he begins again." 4 *N. Y. S. 2d* at 365. See *Bradley v. Danzis Pharmacy,* 5 *N. J. Super.* 330, 332 *(App. Div.* 1949). In *Desautel v. North Dakota Workmen's Compensation Bureau,* 72 *N. D.* 35, 4 *N. W. 2d* 581, 141 *A. L. R.* 858 (1942), the court, citing *Bollard* and distinguishing cases involving the trip home after the day's work had ceased (4 *N. W. 2d* at 583), held that compensation should be allowable where the employee suffered injury on her way to her off-premises lunch during her half hour lunch period. See *Jones v. Continental Electric Co., Inc., supra,* 75 *N. J. Super.* at 77–78; *cf.* 1 *Larson, supra* at § 15.53.

*Larson, supra* at § 15.51 suggests that the trip away from and back to the premises for lunch is in principle indistinguishable from the trip at the beginning and end of the work day and should therefore be governed by the same rules and exceptions. Those of us who believe that the going and coming rule should be discarded would of course allow coverage in both groupings. But, an any event, there are distinctions, as well illustrated by the facts in the matter at hand, which may justify coverage for luncheon trips though no coverage is afforded during trips at the beginning and close of the work day. When the plaintiff's active work was interrupted and he left the premises for lunch he well knew that his work for the day was not at all complete and that he would be returning as soon as his lunch was over. His

time was not really his own and his activities were necessarily curbed by his continuing employment for the day. His hurried luncheon trip was not only work-connected but was much more intimately so than his trip home at the close of the day when his time was fully his own and his activities were no longer curbed by any need to return quickly to his employer's premises. But for his employment (*Howard v. Harwood's Restaurant Co.*, 25 *N. J.* 72, 82 (1957)) he would not have been subjected to the particular highway risks from which the accident on his return trip ensued. In the legal terminology of our precedents those risks and the ensuing accident may fairly be viewed as "reasonably incidental" to the employment. *Bryant, Adm'x. v. Fissell, supra,* 84 *N. J. L.* at 76. We are satisfied that the plaintiff's injury arose out of and in the course of his employment within the broad remedial contemplation of the Workmen's Compensation Act and that he was accordingly entitled to awards thereunder for temporary and permanent disabilities in the appropriate amounts which have been stipulated by the parties.

Reversed.

*For reversal* — Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, MOUNTAIN and SULLIVAN, and Judge CONFORD—6.

*For affirmance*—Justice HALL—1.