559 P.2d 293

Mrs. Leslie O. CLARK, Claimant-
Appellant,

v.

DANIEL MORINE CONSTRUCTION
COMPANY, Employer,

and

United States Fidelity & Guaranty Com-
pany, Surety, Defendants-Respondents.

No. 12195.

Supreme Court of Idaho.

Jan. 11, 1977.

Rehearing Denied Feb. 11, 1977.

Stephen B. McCrea, of Powers & McCrea, Post Falls, for claimant-appellant.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from an order of the Industrial Commission denying death benefits to appellant (widow of the decedent) on the ground that the accident did not arise out of and in the course of decedent's employment. We affirm.

On June 4, 1975, the decedent Leslie Clark agreed to begin work for respondent Daniel Morine Construction Company at 7 a. m. of the following day as a bulldozer operator at a remote work site in the Clearwater National Forest. Such agreement was reached between the parties at Coeur d'Alene, Idaho, which is over 200 miles from the work site. At 2 p. m. on June 4, Clark left Coeur d'Alene in the company of two other vehicles owned by Morine. Although not required to do so, since Clark knew the general area around the work site, he agreed to follow the other vehicles.

After the vehicles passed Headquarters, Idaho, they travelled a winding, twisting, one-lane, improved forest road which in part paralleled the Clearwater River. That road had been recently graded, was open to the public as well as to Forest Service employees and loggers, and was described as well travelled. While traversing a stretch of that road which was fairly straight and approximately 20 feet in width, Clark's pickup inexplicably left the road and went into the river. The time of the accident was fixed at approximately 11 p. m.; the night was extremely dark and the personnel in the preceding vehicles were not aware of the accident. Clark's body was not recovered until some days later, and the cause of death was attributed to drowning.

Appellant's argument is essentially that the travel time, the darkness, the dust and the inherent danger presented by a winding road bounded on one side by mountains and on the other by the river presented a special exposure to a hazard or risk peculiarly asso-

ciated with the employment. Thus, it is argued, this case falls outside the rule that travel to and from work is not covered by workmen's compensation protection.

■ Generally it is presumed that an *employee* travelling to and from work is not within the course of employment and thus not covered by workmen's compensation protection. However, an exception to that rule does exist when such travel involves special exposure to a hazard or risk peculiarly associated with the employment and that risk is causally connected to the accident. *Jaynes v. Potlatch Forest, Inc.,* 75 Idaho 297, 271 P.2d 1016 (1954); *Diffendaffer v. Clifton,* 91 Idaho 751, 430 P.2d 497 (1967); *In re South,* 91 Idaho 786, 430 P.2d 677 (1967); *Spanbauer v. Peter Kiewit Sons' Co.,* 93 Idaho 509, 465 P.2d 633 (1970). We point out that all the above cases involved "employees" and not persons who were to become "employees" at sometime after the accident in question.

In the case at bar one of the other vehicles was a lowboy type of truck transporting Morine's bulldozer to the work site. It was operated by an independent contractor. The other vehicle was a supply truck driven and occupied by two teenage daughters of Morine. The testimony of those vehicle operators was that in their opinion the trip and the road travelled presented no particular hazard or risk. Other factors were suggested as possibly contributing to the cause of the accident, but were not passed on by the Commission and are not treated here.

■ The Industrial Commission found that the road presented no peculiar difficulty for a driver. That finding is sustained by the evidence and will not be disturbed on appeal. I.C. § 72–732; *See also, Gradwohl v. J. R. Simplot Co.,* 96 Idaho 655, 534 P.2d 775 (1975); *Johnson v. Boise Cascade Corp.,* 93 Idaho 107, 456 P.2d 751 (1969). In the absence of a finding of a special exposure to a hazard or risk peculiarly associated with employment, the general rule is prevailing. Affirmed.

McFADDEN, C. J., and DONALDSON and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

In my opinion the majority opinion of the Court does an injustice to the claimant by inferring, without holding, that her deceased husband, Leslie Clark, was not the employee of Daniel Morine Construction Company, which relationship was by the Commission determined to exist, and the validity of which determination was not made an issue by any of the parties on the appeal to this Court. I disagree that the outcome of claimant's case should hinge on a factual determination as to whether or not the river road to Headquarters, Idaho, presents any "peculiar difficulty for a driver." The issue of law and fact in this case is whether or not Clark met his accidental death while in or incidental to the scope and course of his employment.

The "employment" proposition is readily disposed of. The Commission's findings in this regard are:

"III

"Daniel Morine, on behalf of the company, had entered into a contract with the Forest Service to furnish a crawler tractor and operator in the Kelly Creek Ranger District in the Clearwater National Forest for the purpose of piling brush. The location was approximately 80 miles east of Orofino near the Cold Springs work center. Morine intended to commence work on Monday morning June 5, 1975.

"IV

"To fulfill his contract, Morine desired to employ an operator. He was referred to Leslie Clark. After a telephone conversation, Clark and Morine met in the early afternoon of Sunday, June 4 in Coeur d'Alene. It was understood that Clark would travel to the work site on the fourth in order to commence work the following morning. Clark was to be paid $8 per hour for his work as a tractor operator. He was to work between the hours of 7 a. m. and 4:30 p. m. Due to the remote location of his work, Clark planned to camp at the work site."

These findings are wholly sustained by the evidence. Morine telephoned Clark and the

Coeur d'Alene meeting took place on Sunday, June 4, 1975. *Morine hired Clark on the spot.* The two agreed upon wages, hours and Clark's living arrangements *at the work site.* Clark filled out a W-4 withholding form, and was to be on the crawler piling brush at 7:00 o'clock a. m. the *following morning* at a United States Forest Service work site in the Clearwater National Forest, in order that Morine could meet his contractual obligation with the United States Forest Service.

Under such circumstances, Clark's status as an "employee" is not in dispute. Indeed, it was not even questioned by respondent in his brief or at oral argument.

The workmen's compensation law provides the applicable definition in I.C. § 72–102(9):

> " 'Employee' is synonymous with 'workman' and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer. . ."

Correlatively:

> " 'Employer' means any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. . . ."
> I.C. § 72–102(10).

In light of these definitions, which are simply an enactment of matters of common knowledge and understanding, there is no reason nor authority which authorizes this Court to cast doubt upon Clark's status as an "employee" under the facts of this case. Moreover, the liberal intent of workmen's compensation law requires that any doubts be resolved in favor of the existence of the employer-employee relationship. *Fitzen v. Cream Top Dairy,* 73 Idaho 210, 249 P.2d 806 (1952). Clearly Clark had been hired and was Morine's employee.

The Industrial Commission in this case pointedly made its findings and entered its conclusions with an inquisitive and perhaps jaundiced eye on decisions of this Court, particularly *Spanbauer v. Peter Kiewit Sons' Company,* 93 Idaho 509, 465 P.2d 633 (1970), in which case this Court reversed the

Commission as now constituted, and *Jaynes v. Potlatch Forests, Inc.,* 75 Idaho 297, 271 P.2d 1016 (1954), where the Commission was also reversed by this Court. The Commission's conclusions are:

> "I
>
> "When an employee is involved in an accident while driving to work in a private vehicle, there is a presumption that his injury did not arise out of and in the course of his employment. In order to overcome this presumption, claimant must present evidence that there was a special risk or service incident to his employment involved in the travel. *Spanbauer v. Peter Kiewit [Sons' Company],* 93 Idaho 509 [465 P.2d 633].
>
> "II
>
> "While the Supreme Court has recognized the 'peculiar risk' doctrine, where there is such an obvious causal relation between the work and the hazard that the course of employment concept must be expanded to cover an employee, *the Court stated that the exception was not intended to cover all possible accidents but only instances where there was a very real and special danger. Jaynes v. Potlatch Forests,* 75 Idaho 297 [271 P.2d 1016].
>
> "III
>
> "The commission finds and concludes that *in this case, the evidence discloses no special risk or danger* existing which was causally related to the employment of the deceased or resulted in his accident and death, nor was he performing any special work or service for the employer on his journey to the work site." (My emphasis.)

In *Spanbauer* the Commission reached a determination in favor of the claimant in accord with the determination made by this Court just three years earlier in *Diffendaffer v. Clifton,* 91 Idaho 751, 430 P.2d 497 (1967). *Diffendaffer* followed by a scant year *Nichols v. Godfrey,* 90 Idaho 345, 411 P.2d 763 (1966), an opinion authored by Chief Justice McFadden, who is presently the only member of this Court who participated in both *Nichols* and *Diffendaffer.* Because I can so clearly see that the *Diffendaffer* explanation and discussion of *Jaynes*

mirrored that a year earlier in *Nichols*, I am persuaded that the Court has strayed in *Spanbauer* and other cases.

What I perceive to be the apparent consternation of the Commission in the case at hand seems justified. Observing that one member of the Commission did not join in the above conclusions, and entertaining my own belief that the decision in the instant case comes from the Commission only on their yielding to a duty to follow this Court's pronouncements of the law, as best those pronouncements can be understood, I submit that the time is over-ripe for this Court to observe in this field where it has been and where it is going. I feel compelled to make known the result of my own review in the hope that a reappraisal will be of benefit to the claimants, employers, sureties, and the Commission, none of whom, in my opinion, can presently say that the decisions of this Court are anything but a composite of confusion.

Shortly after the advent of the workmen's compensation law, this Court was presented with a case involving a worker who was struck by an automobile, and fatally injured, on Grove Street, in Boise, Idaho. The employer and his surety contended that the employee's death could not be said to have arisen out of and in the course of his employment, *because that risk was common to all the public.* It was held by a unanimous Court, speaking through Justice Givens:

> "Where the employment requires the employee to be on the street he is subjected to a different risk than the ordinary traveler, and so, if he is injured while engaged in that duty or something incidental to it, the accident arises out of the employment." *Zeier v. Boise Transfer Co.,* 43 Idaho 549, 553, 254 P. 209, 209 (1927).

The Court there went on to adopt as its own language the following:

> "It is essential to the right to compensation that the injury shall have been received in the course of the workmen's employment; that it shall have been received while he was doing some act rea-

sonably incidental to his work. An accident or injury is so received while it occurs while he is doing what a man in like employment may reasonably do within the time during which he is so employed, and at a place where he may reasonably be during that time.

> " 'Course of employment' includes acts in which the employer has acquiesced, though they are not done in a strict performance of the employee's duties. An employee is not, like a part of a machine operated by him, fixed to precisely the mechanical movements he must perform in order to discharge his industrial function. He may do whatever a human being may reasonably do while in the performance of his duty without such acts placing him outside of the course of his employment." *Zeier v. Boise Transfer Co., supra,* 43 Idaho at 554–55, 254 P. at 210.

The importance of this case can not be overemphasized; it was handed down on February 14, 1927. The Court had under consideration *at the same time, Walker v. Hyde,* 43 Idaho 625, 253 P. 1104, handed down February 18, 1927, just four days after *Zeier.* In *Walker,* unlike *Zeier,* the claimant was not at the time of the accident doing anything which was a duty of, or incidental to, his employment, but was a commuter on his way back to work. Compensation was denied, with Justices Givens and T. Bailey Lee dissenting, and therein discussing for the first time what we now call the "going and coming rule," and its various exceptions.

Two years after *Zeier* and *Walker,* this Court met head-on with a commuter case, the death of a worker all of whose services were done within the confines of the institution, with the worker meeting his accidental death after leaving the employer's premises. The claimants there placed great reliance on Utah cases, which had been affirmed by the United States Supreme Court. The Supreme Court of Utah, in a track-crossing case, had held that the employee by virtue of his employment was

required to cross the track regularly and continuously, thus *being* peculiarly and abnormally exposed to a common peril, and held that "It is the *greater degree of exposure* to the peril which arises as an incident to the employment *which sustains the causal relation* between the employment and the accident." *Bountiful Brick Co. v. Industrial Commission,* 68 Utah 600, 251 P. 555 (1926), cited in *State v. Clearwater Timber Co.,* 47 Idaho 295, 274 P. 802 (1929).

In *State v. Clearwater Timber Co.,* over a vigorous dissent by Justice Givens, a more far-sighted jurist than his colleagues, compensation was denied to the victim of a railroad crossing accident because,

" . . . such incidental danger is common to the public, and the fact that the employee has to pass that way more frequently is not sufficient to characterize such dangers as peculiarly 'abnormal' . . . ." 47 Idaho at 305, 274 P. at 805.

This harsh rule was said to be derived from "the rule of the English cases" which, in the absence of other case law interpreting workmen's compensation statutes, were said to be "entitled to great weight."[1]

This rule, which sounds very much like the one utilized in today's majority opinion remained the law of Idaho for but the short span of twenty-five years. The *Clearwater* case and its progeny were expressly overruled in *Jaynes v. Potlatch Forests, supra.* A case arising out of an accident at the same crossing, the Court in *Jaynes* granted compensation because of

" . . . a recognition of the *causal connection* between the conditions under which an employee must approach and leave the premises of the employer and the occurrence of the injury; . . ." (Emphasis added.) 75 Idaho at 302, 271 P.2d at 1018.

No requirement was laid down that the travel entail an extremely hazardous risk, or that it be one that was not shared by other members of the public. The sole requirement was said to be

" . . . that the employment involves peculiar and abnormal *exposure to a common peril which annexes itself as a risk incident to and inseparable from the employment;* it is not necessarily based upon nearness to the plant nor upon reasonable distance therefrom or even identifying the surrounding areas as an integral part of the premises for all practical purposes but upon *a causal relationship between the work and the hazard."* (Emphasis added.) 75 Idaho at 302, 271 P.2d at 1018.

It is thus seen that the passage of twenty-five years, and a change in Court membership brought a holding in this Court which it would have reached in 1927 had it been then persuaded by the language of the Utah court and Justice Givens of this Court.

Meanwhile, in those cases where travel on a public street or highway was in, or incidental to, the employment relationship, this Court continued to follow the *Zeier* holding. Gertrude Coleman lost her husband when his vehicle, too, went off the highway and into the Clearwater River. His travel was incidental to services he performed for his employer, entirely in his own way, for the employer's benefit. This Court took note of the *Clearwater* case, but applied *Zeier,* saying "that where one's employment requires him to be upon the public highways, and he travels there, it is part of his employment, and an injury received at such place and under such circumstances is compensable." *In re Coleman,* 53 Idaho 339, 345, 23 P.2d 1115, 1117 (1933).

In that same year this Court, citing *Zeier* for the proposition that, "where employment requires employee to be on street, he is subjected to different risk than ordinary traveler," went on to say this: "in other words, it is held that such an employee is subject, not only to different, but also to greater risks than an ordinary traveler."

---

1. It should be noted that the going-and-coming rule originated in England where the comparable workmen's compensation law "contained no clause mandating the courts to construe the act liberally in favor of workmen seeking benefits." *Hinojosa v. Workmen's Compensation Appeals Board,* 8 Cal.3d 150, 104 Cal.Rptr. 456, 460, 501 P.2d 1176, 1180 (1973).

*Roe v. Boise Grocery Co.,* 53 Idaho 82, 87, 21 P.2d 910, 912 (1933).

There seems to have been no problem with either of those two lines of cases, *Zeier,* on the one hand, and *Jaynes,* on the other, until 1967.

The first time the Court was faced with the argument that the "peculiar risk" doctrine of the *Jaynes* case was "intended to cover only instances where there is a very real and special danger," the Court emphatically rejected so narrow an interpretation, quoting at length from *Jaynes* that its doctrine is:

"a recognition of the causal connection between the conditions under which an employee must approach and leave the premises of the employer and the occurrence of the injury; it recognizes that the employment involves peculiar and abnormal exposure to a common peril which annexes itself as a risk incident to and inseparable from the employment; it is not necessarily based upon nearness to the plant nor upon reasonable distance therefrom or even identifying the surrounding area as an integral part of the premises for all practical purposes but upon a causal relationship between the work and the hazard." *Diffendaffer v. Clifton,* 91 Idaho 751, 757, 430 P.2d 497, 503 (1967).

*And see,* cases and treatises cited therein.

It is important to note in *Diffendaffer* the Commission concluded *that the risk or hazard of travel* in that case was *an exposure occasioned by the employment,* and the Commission, as well as this Court, is then seen as being properly aware that the inquiry was not for the existence of peculiarly dangerous highway conditions. In *Diffendaffer* observe this further ultimate finding:

"The evidence establishes that the Claimant's accident arose out of and was a necessary risk associated with his employment and the conditions, obligations and incidents of that employment. The Board finds and rules that the accident and resulting injury arose out of and in the course of his employment." *Diffen-*

*daffer v. Clifton, supra,* 91 Idaho at 756, 430 P.2d at 502.

In recent years, however, the holding of the *Jaynes* case has been stood on its head. The test of *"peculiar and abnormal exposure to a common peril"* has given way to something which looks and sounds like the same merchandise, but is not. The test now is that of *exposure to peculiar, abnormal and wholly uncommon peril. See, Harris v. William J. Burns Int. Detective Agency, Inc.,* 94 Idaho 440, 489 P.2d 1320 (1971); *Spanbauer v. Peter Kiewit Sons' Co.,* 93 Idaho 509, 465 P.2d 633 (1970); *In re South,* 91 Idaho 786, 430 P.2d 677 (1967).

The Commission applied *Diffendaffer* to claimant's case in *Spanbauer v. Peter Kiewit Sons' Company, supra.* This Court, in what appears to be a complete flip-flop from *Diffendaffer,* reversed the Commission, saying that claimant there "suffered his injuries while in an automobile accident on his way to work as might have any other person proceeding along that roadway that morning and thus the injuries respondent received were not compensable." *Spanbauer v. Peter Kiewit Sons' Company,* 93 Idaho at 511, 465 P.2d at 635. Treating Spanbauer as a pure commuter, which he was not, the rationale of the case was that he could not recover under the *Jaynes* doctrine because of a failure to establish a special risk involved in his travel, notwithstanding that only lines later, the *Jaynes* doctrine is quoted, correctly, for the truth of the doctrine, i. e., that the employment involves peculiar and abnormal exposure to a common peril.

As a result, cases are now argued (and distinguished) on such grounds as: Was the road graded? or was it gravelly? slippery? dusty? Did the employees travel alone or in caravan? with a boss or only with other employees? Was the road open to the public or not? Was the journey made in daylight or at night? and, if at night, was it a moonlit or a moonless night? Such a focus trivializes the "peculiar risk" doctrine. It is profoundly ironic that the *peculiar risk* doctrine of the *Jaynes* case—which expressly overruled the Court's earlier mechanical ap-

proach of looking to see if the injury occurred off-premises or on-premises, on privately or publicly owned property—has itself come to stand for the mechanical test that an injury, to be compensable, must be due to *peculiarly risky* conditions. In so doing, a small sub-set of compensable accidents has swallowed up the Court's attention, displacing once again the statutory guidelines.

The heart of the problem lies with this Court and its attempt to lay down rules which may hopefully fit all manner of cases which may arise. The going and coming rule is such an attempted rule. It was short-lived in *Clearwater,* and gave way to *Jaynes,* because it was working an injustice on the employees. But it is still a rule, differently worded, and still subject to the problems of rules, exceptions to rules and exceptions to exceptions. While this has transpired, *Zeier* remained sound, simply because it was premised on an adherence to the statutes by which these cases are to be governed, and not by rules which this Court from time to time makes, overrules, and fails to follow.

Just recently Federal Judge, now Chief Justice, Burger warned that the rule

" . . . speaks to the *ordinary,* the usual, the normal, the routine hazards which would attend travel between any two points rather than unusual hazards arising out of the foreseeable and abnormal consequences [of the particular fact pattern of this accident.]" *Van Devander v. Heller Electric Co.,* 132 U.S.App.D.C. 40, 405 F.2d 1108, 1110 (1968).

When the case presented does not involve an ordinary, routine commute, the rule is frequently at odds with the standards laid down in the statute. Tension inevitably results between the two approaches.

Our statute requires only that the "accident" be

· " . . . an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place

where it occurred, causing an injury." I.C. § 72–102(14)(b).

and that the "injury" be

" . . . a personal injury caused by an accident *arising out of and in the course* of any employment covered by the workmen's compensation law." I.C. § 72–102(14)(a)

In short, the statutory approach is *positive*: if one brings himself within the statutory language, compensation is awarded. By contrast, the going-and-coming rule is *negative* : the general rule is one of non-compensability unless one can fit within a recognized exception.

The history of Idaho case law on this topic can be read as the playing out of the tension between these two approaches. In the case of *Murdoch v. Humes & Swanstrom,* 51 Idaho 459, 6 P.2d 472 (1931), the Court granted compensation to a worker whose injury resulted from talking a co-worker into letting him drive a car with which he was totally unfamiliar. The Court rejected the notion that "an employee engaged in private or personal activities or who is acting out of curiosity or to gratify a personal desire" is not entitled to compensation for resulting accidents. The Court could find no such exclusion in the statute and provided the following gloss on the key statutory language:

"An injury *arises in the course of the employment* when it takes place (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it." 51 Idaho at 464, 6 P.2d at 474, quoting from *Stakonis v. United Advertising Co.,* 110 Conn. 384, 148 A. 334, 336, (1930).

In *Dutson v. Idaho Power Co.,* 57 Idaho 386, 65 P.2d 720 (1937), the Court granted compensation to a worker who was killed in a car accident which occurred on a mountain road leading down to a Snake River dam project, which road was a private roadway built, owned, and maintained by the employer. The fact that, as here, he was not "performing any special work or service

for the employer on his journey to the work site," was deemed irrelevant. Compensation was awarded because Dutson was

"... traversing the only means of ingress or egress, whether furnished by the employer or by others, but used with the employer's knowledge and consent; ... The road was the common way, and, ... the only way provided for him to travel on his way to work. If he had not been so employed and if he had not been engaged upon his master's business, though it was preparatory to his actual employment—the accident would not have happened to him as an employee; hence the accident arose out of the employment." 57 Idaho at 394, 65 P.2d at 724, quoting from Judge Given's dissent in *Walker v. Hyde,* 43 Idaho 625, 637, 253 P. 1104 (1927).

In *Skeen v. Sunshine Mining Co.,* 60 Idaho 741, 96 P.2d 497 (1939), the Court rejected the notion that an accident must occur during actual work hours in order to be compensable. Such a mechanical rule was held incompatible with the statute:

"It seems clear that a workman may and sometimes should arrive at the place where he is to work some period of time before his actual labor is to start. The reasonableness of the period of time allowable in such cases depends on the circumstances of the employment, i. e., the place of work, the character of the work, the distance to be traveled in going to the work, the hazards or chances of delay on the way, means of conveyance, and possibly other contingent circumstances." 60 Idaho at 747, 96 P.2d at 498.

In the case of *Hansen v. Superior Products Co.,* 65 Idaho 457, 146 P.2d 335 (1944), the Idaho Supreme Court broke with those jurisdictions which had fallen into the mechanical application of a "lunch hour rule" denying compensation for all off-premises accidents occurring while going to or coming from home on one's lunch hour. The Court ruled that such a reading of the Workmen's Compensation statute would be "too technical a view of the law." 65 Idaho at 460, 146 P.2d at 337.

In *Smith v. University of Idaho,* 67 Idaho 22, 170 P.2d 404 (1946), compensation was awarded to a University dorm hostess who was injured while shopping in Moscow. The Court made still more precise its interpretation of the key statutory language:

"... *an injury arises out of the employment* if it arises out of the nature, condition, obligation or incidents of the employment ... it is enough *if there is a causal connection between the injury and the business ... a connection substantially contributory though it need not be the sole or proximate cause.*" (Emphasis added.) 67 Idaho at 28, 170 P.2d at 408.

Case by case application of the statutory test was seen as the sole valid approach, rather than the quick application of any magical criterion:

"The rule would seem to be well established that in order to be entitled to compensation it is *not* necessary that at the time of the accident (1) the employee was doing something for the direct benefit of the employer; (2) that he was at his place of duty, and (3) that he was injured during working hours." 67 Idaho at 28–29, 170 P.2d at 408, quoting *Cudahy Packing Co. of Nebraska v. Parramore,* 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532 (1923).

In *Colson v. Steele,* 73 Idaho 348, 252 P.2d 1049 (1953), the Court refused to follow those jurisdictions which had created an automatic exclusion for accidents resulting from on-the-job horseplay. The worker, who was injured by a ricocheting bullet while rabbit shooting during lunchtime, was awarded compensation. The Court made even more precise the exact conditions imposed by the statute:

"Nor is it necessary that the particular act or event which is the immediate cause of the injury be itself part of any work done for the employer by the claimant or others. ... *Not that the act is in the line of duty, or forwards the work, or creates special risk, but that the work brings the employee within its peril* makes it, for purposes of compensation,

'part of the work'." (Emphasis added.) 73 Idaho at 352, 252 P.2d at 1051, quoting *Hartford Accident & Indemnity Co. v. Cardillo,* 72 App.D.C. 52, 112 F.2d 11, 14–15 (1940).

In summary, while the general temptation is to fall back on comfortable rules-of-thumb which achieve instant solutions by categorizing cases as, "off-premises activity," or "off-hours activity," or "lunch-hour activity," or "horseplay," for 50 years this Court has distinguished itself again and again by rejecting such facile, mechanical rules and focusing on the inquiry mandated by the statute.

The rule of *Jaynes* is in actuality nothing but a resort to the application of the statutory requirements for compensability; it finds a causal nexus between the employment and the exposure to the cause of the accident, and the resultant injury. It is nothing more than the same result obtained in *Zeier* and that line of cases, where the right result is obtained by the Commission time after time by applying the plain intendment of the statute.

Notable jurists and writers have already expressed dissatisfaction with the going-and-coming rule. Every commentator who has ever written on the subject agrees with Dean Pound's assessment, over two decades ago, that:

> "A rule which has developed at least six recognized exceptions since it was announced in England in 1908 is evidently, if not moribund, deserving of overhauling as a whole." Current Articles of Special Interest: Workmen's Compensation, 14 NACCA L.J. 394, 400 (1954).

*And see,* Horowitz, "Reviews of Leading Current Cases—The Going and Coming Rule," 14 NACCA L.J. 36 (1954); Note, Workmen's Compensation: The Going and Coming Rule and Its exceptions in Arkansas, 21 Ark.L.Rev. 414 (1967); Note, The Going and Coming Rule, 41 N.D.L.Rev. 185 (1965); Comment, 7 San Diego L.Rev. 174 (1970); Comment, 1 St. Mary's L.J. 89 (1969); Horowitz, Worldwide Workmen's Compensation Trends, 59 Ky.L.J. 37 (1970).

The Michigan Court of Appeals recently launched a frontal assault on the going-and-coming rule and proposed what I consider to be an eminently sensible substitute approach, one that is in perfect accord with the history of workmen's compensation law in Idaho:

> "It is the general well-settled rule in Michigan that injuries sustained while going to and from work are not compensable. This general rule however has been repeatedly riddled with exceptions to the extent that it seems to have become an exception to the exceptions. From this consequent erosion of the general rule, it would appear that there is arising through evolution *a new rule which compensates where 'there is a sufficient nexus between the employment and the injury'* so that it may be said that the injury 'was a circumstance of the employment.' (Emphasis added.) *Stark v. L.E. Myers Co.,* 58 Mich.App. 439, 228 N.W.2d 411 (1974).

California has likewise discarded the going-and-coming rule when dealing with situations which "do not involve local commutes en route to fixed places of business at fixed hours." The court held that

> " . . . continuing to focus on the artificially perpetuated 'rule' and its categories of exceptions causes that board and the courts to lose sight of the primary statutory test of 'in the course of employment.'" *Hinojosa v. Workmen's Compensation Appeals Board,* 8 Cal.3d 150, 104 Cal.Rptr. 456, 461, fn. 5, 501 P.2d 1176, 1181, fn. 5 (1973).

Other jurisdictions have had similar misgivings and have either rejected or severely restricted the application of the rule. *Brousseau v. Blackstone Mills,* 100 N.H. 493, 130 A.2d 543, 545 (1957); *Hornyak v. Great Atlantic & Pacific Tea Co.,* 63 N.J. 99, 305 A.2d 65 (1973).

Finally, if one must accept the format of a going-and-coming rule plus its exceptions, I would point to other well-reasoned exceptions which have been created when, as here, the facts bear no resemblance to the normal commuter accidents which the gen-

eral rule was intended to exclude. Thus, there has evolved an exception for accidents occurring while en route to or from specially urgent work, *Anderson Construction Co. v. Franklin,* 315 P.2d 785 (Okl.1957); . . an exception for injuries sustained while traveling to meet the contractual commitments of the general employer, *Jackson v. Long,* 289 So.2d 205 (La.App.1974); . . an exception where job-related fatigue was arguably the cause of the accident, *Van Devander v. Heller Electric Co.,* 132 U.S. App.D.C. 40, 405 F.2d 1108 (1968). Each of these exceptions could be construed to cover the present case.

As recently as November, 1975, this Court stated what I take to be the most fundamental principles of construction which must guide us in applying Idaho's workmen's compensation law, namely, that

" . . . there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction." *Goodson v. L.W. Hult Produce Company,* 97 Idaho 264, 543 P.2d 167, 169 (1975).

My research leads me to conclude that "the going-and-coming rule," as applied outside the context of routine commuter accidents, no longer carries out these fundamental policies. In this case in particular, it has led to the unjust result of denying compensation to Leslie Clark's widow.

Morine required Clark's services as the operator of the bulldozer at 7:00 o'clock a.m., some 200 miles distant. Clark's accidental death occurred incidental to the travel required of him to be on the job and ready to start piling brush. What this case is not is a commuter case. A case with a fact pattern similar to the one here is *Jackson v. Long,* 289 So.2d 205 (La.App.1974). In that case, Manpower of New Orleans was under contract with a utility company in Gulfport, Mississippi, to supply two cooks for service crews doing repair work in the aftermath of Hurricane Camille. The cooks filled out their work papers, were dispatched from New Orleans, were making the 75 mile trip in their own vehicle and were to report to the on-site supervisor. Injuries were sustained in a car crash en route. As in the present case, actual work would not begin until arrival at the site, no travel expenses were to be paid, and the cooks were to be paid only for the actual hours worked. Manpower, like Morine, thus attempted to "disassociate itself from any responsibility for transporting its employees." The court ruled that even under such circumstances, the "traveling was an integral part of this employment contract." The court then held, in language notably similar to that this Court has in the past used:

"Since the travel was in furtherance of the employment by the general employer, the risk of accident during travel was a risk interrelated with the nature of the employment, and the plaintiff was protected while traveling to the assigned place of work in obedience to the employer's instructions *and for the employer's benefit."* (Emphasis added.) *Jackson v. Long,* 289 So.2d at 208.

Mention should also be made that it was not crucial to a proper determination of this case as to what caused Clark's accident. It will never be known, but it is not important. What is important is that his job commitment, based on his employer's contractual commitment to the Forest Service, required that Clark be on that dozer at 7:00 o'clock a.m. the early morning on the day following his being hired. The accident could have been occasioned by any number of things: a deer may have suddenly run on the roadway, causing a swerve to avoid it; another vehicle could have forced him over; the vehicle's steering apparatus could have failed; fatigue may have overcome him; a tire may have blown out—all of which is of no consequence in a workmen's compensation case.

In *Stover v. Washington County,* 63 Idaho 145, 118 P.2d 63 (1941), a county commissioner was killed at a railroad crossing while trying to get from his home to the

**124**

highway. This Court, unanimously speaking through Justice Ailshie, stated:

> "It is clear that the business of the employer (Washington county) was the cause and active incentive for decedent starting on the trip that morning to the courthouse; except for the employment, he would not have been on *that* trip. . . . We conclude that decedent, at the time of the accident and resultant injury, was pursuing the course of his employment." (Underscoring mine.) 63 Idaho at 152, 118 P.2d at 66.

In *Murdoch v. Humes & Swanstrom,* 51 Idaho 459, 6 P.2d 472 (1931), this was said:

> " . . . deceased was furthering his master's interest and carrying out part of his duties as employee; . . ." 51 Idaho at 468, 6 P.2d at 475.

The coming-and-going rule should be discarded. I would reverse the decision of the Commission, which decision I feel the Commission made only because of pronouncements of this Court, and I would remand the case to the Commission to reach a determination as to whether or not Clark's accidental death arose out of and in the course of his employment.