719 P.2d 1146

**Lou JOHNSON, Claimant-appellant,**

v.

**AZTECK ELECTRIC, Employer,**

**and**

**Employers' Insurance of Wausau, Surety, Respondents.**

**No. 16058.**

Supreme Court of Idaho.

May 16, 1986.

---

Everett D. Hofmeister, Coeur d'Alene, for claimant-appellant.

David W. Cantrill of Cantrill, Skinner, Sullivan & King, Boise, for respondents.

BAKES, Justice.

The sole issue presented in this appeal is whether the injuries sustained by appellant while traveling to a worksite are compensable under the workmen's compensation laws of the state. The Industrial Commission found that claimant's injuries were not incurred in the course of his employment and therefore denied compensation benefits. We conclude that the Industrial Commission's findings are supported by substantial competent evidence and affirm.

The facts are undisputed and are essentially as follows. Claimant Lou Johnson is a journeyman electrical lineman and a member of Spokane, Washington, Local I.B.E.W. No. 77. Mr. Johnson was hired by Azteck Electric under the terms of the union's collective bargaining agreement on October 3, 1983. Mr. Johnson was employed for a particular project located between Bovill, Idaho, and Elk River, Idaho. Under the terms of the collective bargaining agreement, Azteck Electric was required to designate as "job headquarters" a "place where accommodations are sufficient within a five mile radius from such job headquarters to provide suitable board and lodging for all workmen reporting to such job headquarters." Azteck designated Moscow, Idaho, as its "job headquarters" for this particular project.

Under the collective bargaining agreement, "reporting headquarters" was defined as "any agreed upon place where living facilities are not sufficient to accommodate all members of the crew reporting to this headquarters." Azteck designated Bovill, Idaho, as its reporting headquarters. Essentially, the reporting headquarters was the site where workmen would report at the beginning of each work day and at which point hourly compensation would begin to accrue. Under the terms of the collective bargaining agreement, when the job headquarters and reporting headquarters differed, the employer was required to pay additional compensation for the travel time between the two sites. The agreement specifically provided as follows:

"(a) All men working out of a reporting headquarters shall be reimbursed for travel time at the rate of one dollar ($1.00) per mile one way. Reimbursements for travel time shall be computed on the distance one way from the center of a city or town qualified to be a job headquarters to reporting headquarters where workmen will report at the beginning of the work day."

Thus, under the facts of this case, compensation for travel time was at the rate of $1.00 per mile one way from Moscow to Bovill, a distance of approximately 35 miles. Although Moscow was designated as job headquarters, claimant set up temporary residence in Deary, Idaho, which was about 10 miles from Bovill. Nevertheless, Mr. Johnson was still paid "travel time" at the daily rate of $1.00 per mile one way

between Moscow and Bovill. On weekends Mr. Johnson would drive home to Coeur d'Alene, Idaho, his permanent residence, returning to work on Monday morning in time to report to reporting headquarters at Bovill prior to the beginning of the work shift.

On Monday, October 17, 1983, Mr. Johnson was returning to reporting headquarters in Bovill after having spent the weekend at his residence in Coeur d'Alene. However, instead of proceeding south on U.S. Highway 95 from Coeur d'Alene to Moscow, Mr. Johnson decided to take a short cut and turned off at Potlatch, approximately 17 miles north of Moscow, on to a gravel road which connected Potlatch to Deary. Approximately 12 miles down this road, claimant stopped his truck by the side of the road. Upon leaving the vehicle he noticed that it was rolling backwards, and he attempted to return to the vehicle and bring it under control. At that point the vehicle went over an embankment, landing on Mr. Johnson and pinning him underneath. He suffered severe injuries to his hip and ribs as a result of the accident.

In its findings of fact, the Industrial Commission specifically stated, "At the time of the accident, claimant had not yet returned to the route he normally took from Deary to Bovill to report for work ... *nor was claimant on the route for which payment for travel time was being provided by employer.*"

Claimant contends on appeal that under the terms of the collective bargaining agreement his travel time to the job site was within the course of his employment. Although claimant was compensated for his travel time in the form of a mileage rate, that alone does not support a finding as a matter of law that the accident occurred in the course of claimant's employment. The Industrial Commission in its conclusions of law correctly applied the law as enunciated by this Court in its cases of *Spanbauer v. Peter Kiewit Sons Co.,* 93 Idaho 509, 465 P.2d 633 (1970), and *Barker v. Fischbach & Moore, Inc.,* 105 Idaho 108,

666 P.2d 635 (1983), *on appeal after remand,* Barker v. Fischbach & Moore, Inc., 110 Idaho 871, 719 P.2d 1131 (1986). As we indicated in those cases, proof of compensation for travel time may be some evidence that the employer regarded the employee's travel as part of his employment; however, such evidence must be considered "along with other evidence" in determining whether an accident was in the course of employment. In the present case the Industrial Commission did consider other evidence on the question of whether claimant's travel time was considered part of his employment. The Industrial Commission specifically found that the amount of compensation and the distance traveled both indicated that claimant's travel was given consideration by his employer as part of his employment. However, the commission also specifically concluded that the accident occurred on a route not contemplated by the employment agreement and for which the employer was not paying compensation. The injuries occurred at a point prior to claimant's returning to the route for which the employer provided compensation. Based on this finding the commission concluded that the travel pay exception to the general rule that injuries sustained traveling to and from work are not compensable was inapplicable. We hold that the facts of the present case, as found by the commission, clearly fall within the *Spanbauer* decision as modified by *Barker v. Fischbach.* The Industrial Commission found no "causal relationship between the work and the hazard which cause[d] the injury," noting that:

"At the time of claimant's injury, he was traveling on a road other than the road which he customarily took from his temporary residence in Deary to the reporting headquarters in Bovill and a road other than the road between the job headquarters in Moscow and the reporting headquarters in Bovill, which form the basis for his travel compensation. He was on the alternate road entirely because of his personal preference for returning home on weekends instead of staying in Deary at his temporary resi-

dence or in Moscow at the job headquarters established by employer."

The commission did not err in applying the law to the facts of this case and its findings and conclusions are supported by substantial competent evidence on the record. We therefore affirm its decision.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

Historically, not ancient history but short months ago, I ended an opinion in *Barker v. Fischbach & Moore, Inc.*, 110 Idaho 871, 719 P.2d 1131 (1986) (*Barker II*), with this quaere:

> Having backed away from today's opportunity to remedy the injustice created by its own error, how, then, if at all, does the Court propose to do so?

The Court-created error of which I wrote occurred in *Spanbauer v. Peter Kiewit Sons Co.*, 93 Idaho 509, 465 P.2d 633 (1970), which the majority again callously does not hesitate to use, and does use, as follows: "The Industrial Commission in its conclusions of law correctly applied the law as enunciated by this Court in its cases of *Spanbauer v. Peter Kiewit Sons Co.*, 93 Idaho 509, 465 P.2d 633 (1970)...." 110 Idaho p. 888, 719 P.2d p. 1148. The majority even has the audacity to make reference "to the general rule that injuries sustained traveling to and from work are not compensable...." P. 888, 719 P.2d p. 1148. This is almost too much to graciously stomach. The "general rule" is the Idaho Supreme Court's *Spanbauer* rule, manufactured out of carelessness and indifference by the five justices who comprised the Court membership in the year 1970.

Of course, as the majority does correctly note, the Commission applied the Court's general rule in deciding the claim of Lou Johnson for compensation for injuries suffered while commuting. The Commission had no alternative. The Commission had properly decided the *Spanbauer* case in the claimant's favor—only to be overturned by

application of the *Spanbauer* general rule. Outrage and irony in one Court-delivered package.

My *Barker II* opinion, rendered after extensive time-consuming research, made it irrefutably crystal clear that the "general rule" of *Spanbauer*, to wit: "When an employee is injured while driving to work in a private automobile, *there is a presumption that his injury did not arise out of and was not in the course of his employment.* [*Spanbauer, supra,*] 93 Idaho at 510, 465 P.2d at 634 (emphasis added)," was a monstrous misstatement of then existing law. It was said in *Spanbauer* to have substantiation in two earlier cases, *In re South*, 91 Idaho 786, 430 P.2d 677 (1967), and *In re Croxen*, 69 Idaho 391, 207 P.2d 537 (1949). Not being so naive as to believe that all of my brother justices would take my word for the terrible truth that the *Court itself had unjustly and erroneously outright created a presumption against a working man*, those cases and cases preceding them had their innards laid open to full disclosure. The same presumption was applied to deprive a working man's widow of benefits in *Clark v. Daniel Morine Construction*, 98 Idaho 114, 559 P.2d 293 (1977). In that case my separate opinion had pointed out the Court's straying from the rule of the *Jaynes* case,[1] which case the Commission had faithfully and properly applied in its *Spanbauer* decision—only to be reversed by this Court on the concoction of the same general rule the majority ruthlessly applies today. In *Barker II*, three months ago, this much from *Clark* was repeated:

> In recent years, however, the holding of the *Jaynes* case has been stood on its head. The test of *"peculiar and abnormal exposure to a common peril"* has given way to something which looks and sounds like the same merchandise, but is not. The test now is that of *exposure to peculiar, abnormal and wholly uncommon peril.* See, *Harris v. William J. Burns Int. Detective Agency, Inc.*, 94 Idaho 440, 489 P.2d 1320 (1971); *Span-*

---

1. *Jaynes v. Potlatch Forests, Inc.*, 75 Idaho 297, 271 P.2d 1016 (1954).

*bauer v. Peter Kiewit Sons' Co.*, 93 Idaho 509, 465 P.2d 633 (1970); *In re South*, 91 Idaho 786, 430 P.2d 677 (1967). *Clark, supra*, 98 Idaho at 120, 559 P.2d at 298 (emphasis added).

Today, I cannot more aptly describe my bewilderment, where Mr. Johnson is added to the ever-growing list of those claimants who are unjustly victimized by this Court's arrogant obstinance, than was done in *Barker II*:

## V.

For the foregoing reasons, I am unable to join the opinion for the Court, and am left wondering what it will take to influence three members of this Court to correct the prejudicial detriment continuing to be caused claimants by the *Spanbauer* case. The supposed *science* of jurisprudence is poorly served this day.

A few years ago some member of our profession, a district judge, if my memory serves me correctly, called my attention to the Law of Inverse Irreversibility. It was suggested that that law is especially applicable whereon petition for rehearing it is irrefutably shown that a court or authoring justice thereof is in error. Because that law also seems applicable under today's circumstances, it is worthy of mention. Ralph Estling, writing for the weekly "New Scientist" of London, reprinted in *World Press Review*, April 1983, p. 36, explained how it works:

> Put in its simplest way, the principle of inverse irreversibility means that a scientist—or anyone else in the business of forming some general "law" by which the universe, or a large part of it, is governed—will view his law in inverse proportion to the amount and weight of evidence against it. A little evidence against it will cause agonies of doubt; moderate amounts will cause real concern and a pursing of lips; but *irrefutable proof of his law's inaccuracy and untenability will cause the*

> *scientist to cling to it with the tenacity and singlemindedness of a barnacle.*

Forsooth, it would seem that that principle is clearly being applied by those who comprise today's majority and tenaciously cleave to the *Spanbauer* presumption in favor of the surety and against the dead working man's widow. By reason of this Court's illfounded manufacturing of that presumption, these are the *known* claimants who have already been penalized by it: Mrs. Spanbauer, whose award was reversed; Mrs. South, who was denied benefits by a Commission which now for fifteen years has been obliged to apply *Spanbauer;* and Mrs. Clark, whose claim was also denied on the basis of *Spanbauer. Barker II, supra,* 110 Idaho p. 885, 719 P.2d p. 1145.

The members of the Court who comprised the *Barker II* majority were able to avoid the serious problem there with which they were confronted by my *Barker II* opinion by the expedience of holding that "the law of the case" required the application of *Spanbauer* to *Barker II* through *Barker I.*[2] Today, there is no such "escape hatch" available to them, and, in the parlance of the profession, each of them will have to stand or fall on the record. They can, of course, stand pat, but if what I have written in *Barker II* only three months ago cannot be successfully challenged, it is this Court as an institution which suffers a severe blow to its intellectual integrity.

---

**2.** And in so doing, the Court in that evasive process made extremely bad law, which was

well pointed out in Part I of my *Barker II* opinion, beginning at p. ——, 719 P.2d p. 1133.