719 P.2d 1131

**In the Matter of Edwin H. BARKER, Deceased.**

**Katie L. BARKER, Claimant-Appellant,**

v.

**FISCHBACH & MOORE, INC., Employer, and the Travelers, Surety, Defendants-Respondents.**

No. 15445.

Supreme Court of Idaho.

Feb. 4, 1986.

William R. Hollifield of Decker & Hollifield, Twin Falls, for claimant-appellant.

John W. Barrett of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

**PER CURIAM:**

Edwin H. Barker was an electrician employed by Fischbach & Moore, Inc. Pursuant to a contract executed between the employer and Barker's union, Barker received $90 per week as a travel allowance for travel between his home in Twin Falls and the work site, which was located 26 miles east of Arco.

At approximately 12:00 noon on April 25, 1980, Barker left the work site to travel to a dentist appointment in Twin Falls. En route to the dentist's office, Barker was involved in a single car accident that resulted in his death.

Barker's wife then filed a claim for workmen's compensation death benefits, alleging that Barker's death had arisen out of or

during the course of his employment.[1] The Industrial Commission denied benefits after concluding that Barker had left the work site and was not engaged in his employment at the time of the accident.

On appeal, this Court reversed. *Barker v. Fischbach & Moore, Inc.*, 105 Idaho 108, 666 P.2d 635 (1983) *(Barker I)*. In *Barker I* this Court acknowledged that *Spanbauer v. Peter Kiewit Sons' Company*, 93 Idaho 509, 465 P.2d 633 (1970), might appear to hold that the evidence concerning the distance traveled to and from work and the amount of travel expenses paid by the employer is irrelevant in deciding whether or not the exception to the coming and going rule should apply. However, the Court in *Barker I* clarified *Spanbauer*, stating that "it is now necessary for this Court to emphasize that *Spanbauer* is to be read that the payment of travel expenses, *along with other evidence* indicating the employer intended to compensate the employee for travel time, will justify expanding the course of employment to include going to and from work." After thus clarifying *Spanbauer*, the *Barker I* Court remanded the case to the Industrial Commission "to determine if other evidence, besides the payment of travel expenses, exists to support a finding that the employee was within the course of employment at the time of the accident."

On remand, no additional evidence was submitted to the Industrial Commission by the parties. The commission re-examined the record and the written arguments submitted by the parties and issued a decision in which it again denied benefits. The commission concluded that it could "find no evidence, other than the actual payment itself, to indicate that the employer intended to compensate the employee for travel time or travel expense. The commission

therefore concludes that its original decision dismissing the claimant's claim and denying benefits was correct and hereby affirm said decision."

Idaho Constitution, art. 5, § 9, limits this Court's review of Industrial Commission decisions to a review of questions of law. We are required to uphold all factual findings made by the Industrial Commission if those findings are supported by substantial, competent evidence. *In re Chavez*, 104 Idaho 279, 281, 658 P.2d 950, 952 (1983); *Case of Graham*, 103 Idaho 824, 826, 654 P.2d 1377, 1378–79 (1982). Having fully reviewed the record, we conclude that the Industrial Commission's finding that the claimant was not within the course and scope of his employment at the time of the accident is supported by substantial and competent evidence.

Furthermore, our review of the record indicates that the Industrial Commission correctly applied the law as stated in *Barker I* in reaching its decision.

"The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal ...." *Suitts v. First Security Bank of Idaho*, 110 Idaho 15, 713 P.2d 1374 (1985) *(quoting from Carlson v. Northern Pacific Rail Co.*, 86 Mont. 78, 281 P. 913, 914 (Mont.1929).

As we noted in *Suitts*, the doctrine of law of the case has long been the rule in this jurisdiction. *See Palmer v. Dermitt*, 102 Idaho 591, 595, 635 P.2d 955, 959 (1981); *Creem v. Northwestern Mut. Fire Ass'n of Seattle, Wash.*, 58 Idaho 349, 352, 74 P.2d

---

1. Workmen's compensation may only be collected by employees who are injured or killed within the course of employment, I.C. § 72-102(14)(a); I.C. § 72–201. The general rule is that a worker traveling to and from an employer's place of business is not within the course of employment. *Clark v. Daniel Morine Constr. Co.*, 98 Idaho 114, 559 P.2d 293 (1977). How-

ever, an exception to this "coming and going" rule is made when there is a special risk or service incident to the employee's employment involved in his travel. *Ridgeway v. Combined Ins. Companies of America*, 98 Idaho 410, 565 P.2d 1367 (1977); *Jaynes v. Potlatch Forests*, 75 Idaho 297, 271 P.2d 1016 (1954).

702, 703 (1937); *Unfried v. Libert,* 23 Idaho 603, 606, 131 P. 660, 661 (1913); *Hall v. Blackman,* 9 Idaho 555, 75 P. 608 (1904). In fact, this Court has often compared the doctrine of law of the case with the principle of *res judicata,* indicating that an appellate court is bound by the law of the case. *See Idaho Dept. of Law Enforcement v. One 1955 Willys Jeep,* 100 Idaho 150, 157, 595 P.2d 299, 306 (1979) (Bistline, J., dissenting); *Creem v. Northwestern Mut. Fire Ass'n of Seattle, Wash.,* 58 Idaho 349, 358, 74 P.2d 702, 705 (1937) (Ailshie, J., dissenting in part); *Hall v. Blackman,* 9 Idaho 555, 559–560, 75 P. 608, 609 (1904).

The Industrial Commission correctly applied the law announced by this Court in *Barker I* to the facts of this case. Accordingly, the order of the Industrial Commission is affirmed; costs to respondent.

BISTLINE, Justice, concurring in part and dissenting.

## I.

Having sometime ago authored a proposed majority opinion (appendicized) which is much like today's opinion for the Court, I am able to concur with the majority view that the Commission in its second review of this case committed no error and did correctly apply *Spanbauer v. Peter Kiewit Sons' Co.,* 93 Idaho 509, 465 P.2d 633 (1970). And, other than for my penchant for delving deeper into prior opinions of this Court and an overly active sense of justice, my earlier proposed majority opinion would have been unanimous, I would

have spared myself many days of exhaustive research and the writing of a second opinion which incorporated that which my research and study uncovered. This in turn results in deep concern that three members of the Court simply decline to admit that this is a Court itself capable of committing error.[1] I know of no principle of law which absolutely prohibits this Court—any appellate court—from rectifying its own error—especially when a just respect for a court's duty to attempt the achievement of justice has been activated.

I concede that the doctrine of law of the case has been recognized in Idaho as in other jurisdictions.[2] In *Neilsen and Co. v. Cassia and Twin Falls County Joint Class A School District,* 103 Idaho 317, 647 P.2d 773 (1982), the Court of Appeals recognized that it could not review a finding of the *Supreme Court* on a prior appeal in the same case. A general proposition of law is that an inferior court is ordinarily bound by a higher court's determination, with some few exceptions. 5 Am.Jur.2d *Appeal and Error,* § 744.

However stringently the law of the case doctrine may bind inferior courts, it is a different matter where the question comes up in the same appellate court. That doctrine, however, is not binding on appellate courts which on a second appeal perceive that their prior appellate decision was in error. The Arizona Supreme Court, after recognizing that the doctrine was well-established in that state, went on to say:

---

1. This concern is undoubtedly accentuated by those same three members of the Court simply choosing to ignore in *Bint v. Creative Forest Products, Inc.,* 108 Idaho 116, 697 P.2d 818 (1985) that, as pointed out by the separate opinions of Justice Huntley and myself, the cases relied upon by the majority in *Bint* were hopelessly invalid.

2. The Court suggests to its readers that they see the dissent in *Idaho Dept. of Law Enforcement v. One 1955 Willys Jeep,* 100 Idaho 150, 157, 595 P.2d 299, 306 (1979). I have done so, enjoyed rereading it, and commend it as also being instructive on the doctrine of law of the case, especially where a unanimous opinion of the

California Supreme Court was quoted at length, including this passage:

> Where a question of law once determined is sought to be relitigated upon a second appeal to the same appellate court it is clearly established that the first determination is the law . of the case and will not be re-examined *in the absence of unusual circumstances leading to injustice or unfairness* even though the issue sought to be raised involves the jurisdiction of the court on the prior appeal. (citing cases) This is so, even though it is contended that absence of jurisdiction renders the decision on the prior appeal a nullity and ineffective as a determination of any question. *Id.* at 157–58, 595 P.2d at 306–07 (emphasis added).

While some courts insist that the doctrine should be applied at all times, 3 Am.Jur. 547, others create an exception where it appears the former decision was palpably erroneous. An abundance of authority from many jurisdictions sustains this latter principle. For example the Supreme Court of California sixteen years ago rejected the doctrine that the law of the case absolutely precluded reexamination of a manifestly unjust decision.

"* * * The doctrine of the law of the case is recognized as a harsh one (2 Cal.Jur. 947) and the modern view is that it should not be adhered to when the application of it results in a manifestly unjust decision. *United Dredging Co. v. Industrial Acc. Comm.*, 208 Cal. 705, 284 P. 922. However, it is generally followed in this state. But a court is not absolutely precluded by the law of the case from reconsidering questions decided upon a former appeal. Procedure and not jurisdiction is involved. Where there are exceptional circumstances, a court which is looking to a just determination of the rights of the parties to the litigation and not merely to rules of practice, may and should decide the case without regard to what has gone before. *Messinger v. Anderson*, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152; *Seagraves v. Wallace*, 5 Cir., 69 F.2d 163; *McGovern v. Eckhart*, 200 Wis. 64, 227 N.W. 300, 67 A.L.R. 1381." *England v. Hospital of Good Samaritan*, 14 Cal.2d 791, 97 P.2d 813, 814.

Among the more recent cases of like import see *Rutledge v. Rutledge*, 134 Cal.App.2d 689, 286 P.2d 429; *Beverly Beach Properties v. Nelson*, Fla., 68 So.2d 604, 41 A.L.R.2d 1071; *Coleman v. Ziegler*, Mo., 248 S.W.2d 610; *Burke v. Pittsburg Limestone Corp.*, 375 Pa. 390, 100 A.2d 595.

We are of the opinion that a ruling on one appeal if manifestly or palpably erroneous is not to be treated as conclusive on subsequent appeal of the same case. We are of this view because courts exist but for the ultimate purpose of establishing justice. If we adhere rigidly to an arbitrary principle of convenience and declare as our decision that which is clearly wrong and which we know to be wrong, then we are defeating the purpose for which courts exist. Moreover, we are in effect saying that it is of no consequence to us that justice had not in the end prevailed. *Sibley v. Jeffreys*, 81 Ariz. 272, 305 P.2d 427, 429–30 (1956).

As summarized in 5 Am.Jur.2d *Appeal and Error*, § 750:

Since the very purpose of the doctrine of the law of the case is to settle the issues and obviate the necessity of re-examining them on a later appeal, many courts have taken the view that it should be applied regardless of whether it is made to appear that the issues were mistakenly or erroneously decided on the original appeal, and, indeed, that it is only where the first decision was erroneous that there is any necessity for the doctrine to operate.

However, *since the doctrine of the law of the case is merely one of practice or court policy*, and not of inflexible law, so that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in applying it, there are many holdings in which the courts have retreated from any inflexible rule requiring the doctrine to be applied regardless of error in the former decision, and *it has been said that the doctrine should not be utilized to accomplish an obvious injustice, or applied where the former appellate decision was clearly, palpably, or manifestly erroneous or unjust.* (Footnotes omitted) (emphasis added).

The Montana Supreme Court has put it thusly: "[T]he evils of adherence to the rule are sometimes greater than those of a departure from it." *State v. Hale*, 129 Mont. 449, 291 P.2d 229 (1955). The Supreme Court of New Mexico wrote that an appellate court "should apply the law of the land rather than the law of the case."

*Farmer's State Bank v. Clayton National Bank,* 31 N.M. 344, 245 P. 543 (1925).

## II.

The appeal of claimant, Mrs. Barker, depends upon the validity of *Spanbauer, supra.* If *Spanbauer* is not good law, then Mrs. Barker ought to prevail. At least this Court should measure up to its potential, and explain to the Commission—which it overruled—and to the trial bar, just why it goes to such extremes to let *Spanbauer* stand as an unlawful stumbling block to worker's compensation claimants.

In *Spanbauer,* the claimant was injured in an automobile accident on his way to work. The only issue in the case was whether the claimant's injury arose out of and was in the course of his employment.

The Industrial Commission *held that the claimant's injuries were compensable.* The Commission reasoned that a collective bargaining agreement covering the claimant and his employer became part of the claimant's employment compensation, thereby making his travel to and from work within the scope of his employment. The agreement provided that all employees driving each day over 100 miles round trip to a job site would receive $4 per day travel allowance.

This Court disagreed with the Commission's conclusion, stating:

> While proof of compensation for travel expenses or for travel time may be some evidence that appellant [employer] regarded respondent's [employee's] travel as part of his job, such evidence alone cannot support a conclusion that the accident in this case was in the course of respondent's employment. The mere fact that there was such a travel allowance is not conclusive as a matter of law that the accident occurred in the course of a claimant's employment. *Spanbauer, supra,* 93 Idaho at 510, 465 P.2d at 634 (footnotes omitted).

The Court in so stating relied on this statement of law as being appropriate to such off-premises injury:

> When an employee is injured while driving to work in a private automobile, *there is a presumption that his injury did not arise out of and was not in the course of his employment. Id.,* 93 Idaho at 510, 465 P.2d at 634 (emphasis added).

The Court's citation for that statement is footnote 3, p. 511, 465 P.2d at 635: *In Re South,* 91 Idaho 786, 430 P.2d 677 (1967); *see also In Re Croxen,* 69 Idaho 391, 207 P.2d 537 (1949).

What did the Court say in *South?* The same statement, except, and worse, wrote it as being a direct quote from *Croxen:*

> When an employee is injured while driving to work in his own automobile, "there is a general presumption that his injury did not arise out of and in the course of [his] employment" within the meaning of I.C. § 72–201. *In Re Croxen,* 69 Idaho 391, 207 P.2d 537 (1949); see 1 Larson, Workmen's Compensation § 15.11 (1966); 8 Schneider, Workmen's Compensation Text § 1710 (3d or perm. ed. 1951); cf. *In Re Malmquist,* 78 Idaho 117, 300 P.2d 820 (1956); *Eriksen v. Nez Perce County,* 72 Idaho 1, 235 P.2d 736 (1951); *Walker v. Hyde,* 43 Idaho 625, 253 P. 1104 (1927); cf., *Foust v. Birds Eye Div. of Gen. Foods Corp.,* 91 Idaho 418, 422 P.2d 616 (1967); .... *South, supra,* 91 Idaho at 786, 430 P.2d at 680.

What did the Court actually say in *Croxen?* Nothing whatever about a presumption. Instead:

> It may be stated *as a general rule* that an accident does not arise out of and in the course of the employment within the Workmen's Compensation Law when it occurs when the employee is on his way to work and before he has reached the premises of the employer, or when he is on his way home and has left the employer's premises. *Croxen, supra,* 69 Idaho at 395, 207 P.2d at 541 (emphasis added).

The only authority cited for this statement of "the general rule" in *Croxen* is *Reed v.*

*Bliss & Van Auken Lumber Co.*, 225 Mich. 164, 196 N.W. 420 (1923).[3]

What did the Court actually say in *Eriksen?* A later case than *Croxen*, it cites *Croxen* for this:

> As a general rule an accident does not arise out of and in the course of employment within the meaning of the Workmen's Compensation Law when it occurs when the employee is on his way to work and before he reaches the premises of the employer, or when he is on his way home and has left the employer's premises. *Eriksen, supra,* 72 Idaho at 4, 235 P.2d at 739.

Again, as in *Croxen*, no mention of any presumption.

What was said in *Walker?* Nothing whatever about any presumption; nothing whatever about the general rule as set forth in *Croxen* and *Eriksen*. What was said, though?

> Each case must be determined largely upon its particular facts and the law as applied thereto; no hard-and-fast rule can be laid down as controlling. The authorities are irreconcilable, and many

of them may be said to be in direct conflict. The modern [1927] tendency of the decisions, however, to the spirit of the law, is to award compensation in all cases where a liberal construction of the statute would justify it. *Walker, supra,* 43 Idaho at 632, 253 P. at 1111.

On what basis was *Croxen* decided? Solely on *State ex rel. Gallet v. Clearwater Timber Co.*, 47 Idaho 295, 274 P. 802, 66 A.L.R. 1396 (1929)[4], a 4–1 decision with Justice Givens dissenting, and District Judge Hartson sitting in the stead of Justice Budge.[5] That there may be no doubt about it: "In deciding the case and denying liability the Board relied on State ex rel. Gallet v. Clearwater Timber Company ...." *Croxen, supra,* 69 Idaho at 393, 207 P.2d at 539.

This brings us to a discussion of whether or not the case at bar comes within any of the exceptions to the rule stated in the *Clearwater Timber Company* case, supra ....

A review of the cases on the subject has been so well covered in the case of

---

3. The general rule as stated by the Michigan court was one borrowed from *DeVoe v. New York State Rys.*, 218 N.Y. 318, 113 N.E. 256, L.R.A. 1917A 250:

> The employee is not insured generally against accident while working for the street railway corporation. At home or on the street he may meet with accident not arising out of or in the course of his employment. The act does not cover such cases. The employee gets up in the morning, dresses himself, and goes to work because of his employment, yet if he meets with an accident before coming to the employers' premises or his place of work that is not a risk of his occupation but of life generally.

The Michigan court went on to add:

> In applying the general rule that the period of going to and returning from work is not covered by the act, it is held that the employment is not limited by the exact time when the workman reaches the scene of his labor and begins it, nor when he ceases, but includes a reasonable time, space, and opportunity before and after, while he is at or near his place of employment.

Following which the Michigan court pinned its decision largely on the factual determination made by the commission:

> It is insisted by plaintiff's counsel that the case falls within the exception rather than the

rule, while defendant's counsel insist that it falls within the rule. Defendant's counsel also insists that, if it is within the exception, the commission has by its findings determined the question of reasonable time, space and opportunity—a question of fact in this case—adversely to plaintiff's contention, and that such finding is final under the repeated decisions of this court. I am persuaded that the case falls within the rule....

> ... But whether we treat the case as presenting a question of law or of fact or of both law and fact, I am persuaded that the result reached by the department of labor and industry should not be disturbed.

4. *Clearwater Timber* relied upon *Reed & Bliss v. Vanduken Lumber*, 225 Mich. 164, 196 N.W. 420 (1923), and also these cases cited in the *Reed & Bliss* opinion: *Cook v. S.S. Montreal*, 6 B.W.C.C. 220; *Fumiciello's Case*, 219 Mass. 488, 107 N.E. 349; *Fairbanks Co. v. Industrial Com.*, 285 Ill. 11, 120 N.E. 456; and *Procaccino v. E. Horton & Sons*, 95 Conn. 408, 111 A. 594.

5. It is interesting to speculate as to what would have been the opinion of the Court if Justice Budge had sat, and if Justice Herman Taylor had died nine days earlier than he did.

*Clearwater Timber Company,* supra, that a further discussion of such cases would serve no useful purpose.

The case falls within the rule above announced, that the death of deceased did not arise out of and in the course of his employment. The decision of the Industrial Accident Board is affirmed. *Croxen, supra,* 69 Idaho at 396–97, 207 P.2d at 542–43.

The rule of *Clearwater Timber* was applied and the claimant was denied compensation.

When the Court, in the year 1970, denied compensation to the claimant in *Spanbauer,* and did so in reliance upon the *invented* presumption said to be attributable to *Croxen,* what, if any validity did *Croxen* have?

*Absolutely none. Croxen,* a 1949 case, was wholly dependent upon the 1929 *Clearwater Timber* case. Meanwhile, between *Croxen* in 1949 and *Spanbauer* in 1970, the Court in *Jaynes v. Potlatch Forests, Inc.,* 75 Idaho 297, 304, 271 P.2d 1016, 1023, 50 A.L.R.2d 356 (1954), re-examined *Clearwater Timber:* "We decline to follow the decision in the case of State ex rel. Clearwater Timber Co., ... and expressly overrule it."* [Unanimous opinion.]

What does all of this add up to? *Clearwater Timber* was announced in 1929. *Croxen* was announced in 1949—it simply applied *Clearwater Timber. Jaynes* overruled *Clearwater Timber* six years after *Croxen; Jaynes* necessarily also overruled *Croxen* and any other cases which had applied the rule of *Clearwater Timber.*

Notwithstanding, sixteen years after *Jaynes,* the Idaho Supreme Court in *Spanbauer* applied *Croxen* (and *South* ) as authority for the proposition that an employee is saddled with a *presumption* that "his injury did not arise out of and was not in the course of his employment." The *Spanbauer* Court, after inventing the presumption, then placed upon a claimant the obligation of *overcoming* that presumption. This was not only wrong, but even more wrong was that the Court then and there in the business of manufacturing that presumption out of whole cloth, at the same time *ascribed it to prior opinions which said no such thing.*

Obviously the creation of the presumption was an inadvertence which most likely occurred when a law clerk, either over-zealous or careless, thought that general rules and presumptions were synonymous. The Court membership then, which included two justices presently on the Court, was certainly entitled to believe that the draft opinion submitted for their consideration was not premised upon a misstatement of law supposedly, but not uttered by an earlier Court.

Exactly how such took place is a question that cannot be answered. But that it did happen is too well documented to be ignored. The $64,000 question, however, is: What will be the Court's reaction, and what will be done? This is a very serious concern; the very integrity of the Court is at stake. It must be realized that in *Spanbauer* the Industrial Commission's decision was reversed and supplanted, *and in the ensuing fifteen years the Commission has been required to apply it—notwithstanding its own views to the contrary.* And it must be realized also that when this Court not only declared there was such a presumption, but that it had been pronounced by the Court as long ago as *Croxen,* there were not on the Commission any members who were there at the time of *Croxen* and accordingly knew that *Croxen* had *not* created that presumption. In those fifteen years since *Spanbauer* doubtlessly there have been many Commission decisions which applied it to the prejudice of deserving claimants. That harm cannot be undone. But the future is in the hands of this Court. And the time is now.

*Spanbauer* is a decision that was predicated upon a misstatement of the law. Where in civil trials the judge or jury comes to a decision upon a misstatement or misapplication of the law, this Court does not hesitate to reverse—which is as it should be. Likewise, where the Court is now made to see that the *Spanbauer* decision was based on the erroneous belief that

*Croxen* set forth a presumption, one that had to be overcome, against a claimant, the Court should not be in the least hesitant to overrule that case, and all of its progeny. To let stand a presumption against the injured working person, a presumption which has no basis in case law, impugns on the administration of justice. It should not be necessary to dwell on the fact that the presumption invented in *Spanbauer* is the type of presumption that affects the burden of proof. The claimant starts out in a sizeable hole from which he has to extricate himself by the production of evidence which is sufficient to persuade the trier of fact that claimant was within the scope and course of his employment at the time of his injury.

Revisiting *Clark v. Daniel Morine Construction*, 98 Idaho 114, 559 P.2d 293 (1977), one finds what one expects to find. There, too, the Court restated and indulged in the presumption that an employee traveling to and from his work is not covered by worker's compensation protection. 98 Idaho at 115, 559 P.2d at 294. I thought then that that case was wrongly decided. That, of course, was years before my present pursuit of the origin of the *Spanbauer* presumption. Now it is even more clear that the Court's opinion in *Clark* was not sound. Even at that early time, now eight years ago, I was convinced that the Court's reliance on *Spanbauer* was not justified. With the newly gained insight into the *Spanbauer* decision, the proposition before the Court is sufficiently important to repeat some of that which I wrote in *Clark*, all of which is equally applicable to this claimant, also widowed as was Mrs. Clark:

"The Industrial Commission in this case pointedly made its findings and entered its conclusions with an inquisitive and perhaps jaundiced eye on decisions of this Court, particularly *Spanbauer v. Peter Kiewit Sons' Company*, 93 Idaho 509, 465 P.2d 633 (1970), in which case this Court reversed the Commission as now constituted, and *Jaynes v. Potlatch Forests, Inc.*, 75 Idaho 297, 271 P.2d 1016 (1954), where the Commission was also reversed by this Court. The Commission's conclusions are:

'I

'When an employee is involved in an accident while driving to work in a private vehicle, there is a presumption that his injury did not arise out of and in the course of his employment. In order to overcome this presumption, claimant must present evidence that there was a special risk or service incident to his employment involved in the travel. *Spanbauer v. Peter Kiewit [Sons' Company]*, 93 Idaho 509 [465 P.2d 633].

'II

'While the Supreme Court has recognized the "peculiar risk" doctrine, where there is such an obvious causal relation between the work and the hazard that the course of employment concept must be expanded to cover an employee, *the Court stated that the exception was not intended to cover all possible accidents but only instances where there was a very real and special danger. Jaynes v. Potlatch Forests*, 75 Idaho 297 [271 P.2d 1016].

'III

'The commission finds and concludes that *in this case, the evidence discloses no special risk or danger* existing which was causally related to the employment of the deceased or resulted in his accident and death, nor was he performing any special work or service for the employer on his journey to the work site.' (My emphasis.)

In *Spanbauer* the Commission reached a determination in favor of the claimant in accord with the determination made by this Court just three years earlier in *Diffendaffer v. Clifton*, 91 Idaho 751, 430 P.2d 497 (1967). *Diffendaffer* followed by a scant year *Nichols v. Godfrey*, 90 Idaho 345, 411 P.2d 763 (1966), an opinion authored by Chief Justice McFadden, who is presently the only member of this Court who participated in both *Nichols* and *Diffendaffer*.

Because I can so clearly see that the *Diffendaffer* explanation and discussion of *Jaynes* mirrored that a year earlier in *Nichols*, I am persuaded that the Court has strayed in *Spanbauer* and other cases.

"What I perceive to be the apparent consternation of the Commission in the case at hand seems justified. Observing that one member of the Commission did not join in the above conclusions, and entertaining my own belief that the decision in the instant case comes from the Commission only on their yielding to a duty to follow this Court's pronouncements of the law, as best those pronouncements can be understood, I submit that the time is over-ripe for this Court to observe in this field where it has been and where it is going. I feel compelled to make known the result of my own review in the hope that a reappraisal will be of benefit to the claimants, employers, sureties, and the Commission, none of whom, in my opinion, can presently say that the decisions of this Court are anything but a composite of confusion.

"Shortly after the advent of the workmen's compensation law, this Court was presented with a case involving a worker who was struck by an automobile, and fatally injured, on Grove Street, in Boise, Idaho. The employer and his surety contended that the employee's death could not be said to have arisen out of and in the course of his employment, *because that risk was common to all the public.* It was held by a unanimous Court, speaking through Justice Givens:

'*Where the employment requires the employee to be on the street he is subjected to a different risk than the ordinary traveler,* and so, if he is injured while engaged in that duty or something incidental to it, the accident arises out of

the employment.' *Zeier v. Boise Transfer Co.,* 43 Idaho 549, 553, 254 P. 209, 209 (1927).

The Court there went on to adopt as its own language the following:

'It is essential to the right to compensation that the injury shall have been received in the course of the workmen's employment; that it shall have been received while he was doing some act reasonably incidental to his work. An accident or injury is so received while it occurs while he is doing what a man in like employment may reasonably do within the time during which he is so employed, and at a place where he may reasonably be during that time.

' "Course of employment" includes acts in which the employer has acquiesced, though they are not done in a strict performance of the employee's duties. An employee is not, like a part of a machine operated by him, fixed to precisely the mechanical movements he must perform in order to discharge his industrial function. He may do whatever a human being may reasonably do while in the performance of his duty without such acts placing him outside of the course of his employment.' *Zeier v. Boise Transfer Co., supra,* 43 Idaho at 554–55, 254 P. at 210.

"The importance of this case can not be overemphasized; it was handed down on February 14, 1927. The Court had under consideration *at the same time, Walker v. Hyde,* 43 Idaho 625, 253 P. 1104, handed down February 18, 1927, just four days after *Zeier.* In *Walker,* unlike *Zeier,* the claimant was not at the time of the accident doing anything which was a duty of, or incidental to, his employment, but was a commuter on his way back to work.[6]

---

6. In actuality Walker was not really a commuter in the sense in which that word is generally used. He was a logger; the year was 1924, and after the noon lunch period, on walking with his son back to the work site, Walker attempted to hitch a ride:

As the truck approached the Walkers, they stepped to the left of the road to allow it to pass. A team a little ahead caused the driver

of the truck to slow down, and as he did so the elder Walker ran around behind the truck to the right side and attempted to board its front bunk. In his attempt to get on the truck, Walker fell, and one of the rear wheels passed over his body causing instant death. The driver of the truck did not see Walker when he attempted to ride, and did not know

Compensation was denied, with Justices Givens and T. Bailey Lee dissenting, and therein discussing for the first time what we now call the 'going and coming rule,' and its various exceptions.

"Two years after *Zeier* and *Walker*, this Court met head-on with a commuter case, the death of a worker all of whose services were done within the confines of the institution, with the worker meeting his accidental death after leaving the employer's premises. The claimants there placed great reliance on Utah cases, which had been affirmed by the United States Supreme Court. The Supreme Court of Utah, in a track-crossing case, had held that the employee by virtue of his employment was required to cross the track regularly and continuously, thus *being* peculiarly and abnormally exposed to a common peril, and held that 'It is the *greater degree of exposure* to the peril which arises as an incident to the employment *which sustains the causal relation* between the employment and the accident.' *Bountiful Brick Co. v. Industrial Commission*, 68 Utah 600, 251 P. 555 (1926), cited in *State v. Clearwater Timber Co.*, 47 Idaho 295, 274 P. 802 (1929).

"In *State v. Clearwater Timber Co.*, over a vigorous dissent by Justice Givens, a more far-sighted jurist than his colleagues, compensation was denied to the victim of a railroad crossing accident because,

'... such incidental danger is common to the public, and the fact that the employee has to pass that way more frequently is not sufficient to characterize such dangers as peculiarly "abnormal"....' 47 Idaho at 305, 274 P. at 805.

This harsh rule was said to be derived from 'the rule of the English cases' which, in the absence of other case law interpreting workmen's compensation statutes, were said to be 'entitled to great weight.'

"This rule, which sounds very much like the one utilized in today's majority opinion remained the law of Idaho for but the short span of twenty-five years. The *Clearwater* case and its progeny were expressly

that he intended so doing. *Walker, supra,* 43

overruled in *Jaynes v. Potlatch Forests, supra.* A case arising out of an accident at the same crossing, the Court in *Jaynes* granted compensation because of

'... a recognition of the *causal connection* between the conditions under which an employee must approach and leave the premises of the employer and the occurrence of the injury; ...' (Emphasis added.) 75 Idaho at 302, 271 P.2d at 1018.

No requirement was laid down that the travel entail an extremely hazardous risk, or that it be one that was not shared by other members of the public. The sole requirement was said to be

'... that the employment involves peculiar and abnormal *exposure to a common peril which annexes itself as a risk incident to and inseparable from the employment;* it is not necessarily based upon nearness to the plant nor upon reasonable distance there from or even identifying the surrounding areas as an integral part of the premises for all practical purposes but upon a *causal relationship between the work and the hazard.*' (Emphasis added.) 75 Idaho at 302, 271 P.2d at 1018.

It is thus seen that the passage of twenty-five years, and a change in Court membership brought a holding in this Court which it would have reached in 1927 had it been then persuaded by the language of the Utah court and Justice Givens of this Court.

"Meanwhile, in those cases where travel on a public street or highway was in, or incidental to, the employment relationship, this Court continued to follow the *Zeier* holding. Gertrude Coleman lost her husband when his vehicle, too, went off the highway and into the Clearwater River. His travel was incidental to services he performed for his employer, entirely in his own way, for the employer's benefit. This Court took note of the *Clearwater* case, but applied *Zeier*, saying '*that where one's employment requires him to be upon the*

Idaho at 629–30, 253 P. at 1108–09.

*public highways, and he travels there, it is part of his employment,* and an injury received at such place and under such circumstances is compensable.' *In re Coleman,* 53 Idaho 339, 345, 23 P.2d 1115, 1117 (1933).

"In that same year this Court, citing *Zeier* for the proposition that, 'where employment requires employee to be on street, he is subjected to different risk than ordinary traveler,' went on to say this: 'in other words, it is held that such an employee is subject, not only to different, but also to greater risks than an ordinary traveler.' *Roe v. Boise Grocery Co.,* 53 Idaho 82, 87, 21 P.2d 910, 912 (1933).

"There seems to have been no problem with either of those two lines of cases, *Zeier,* on the one hand, and *Jaynes,* on the other, until 1967.

"The first time the Court was faced with the argument that the 'peculiar risk' doctrine of the *Jaynes* case was 'intended to cover only instances where there is very real and special danger,' the Court emphatically rejected so narrow an interpretation, quoting at length from *Jaynes* that its doctrine is:

'a recognition of the causal connection between the conditions under which an employee must approach and leave the premises of the employer and the occurence of the injury; it recognizes that *the employment involves peculiar and abnormal exposure to a common peril* which annexes itself as a risk incident to and inseparable from the employment; it is not necessarily based upon nearness to the plant nor upon reasonable distance therefrom or even identifying the surrounding area as an integral part of the premises for all practical purposes but upon a causal relationship between the work and the hazard.' *Diffendaffer v. Clifton,* 91 Idaho 751, 757, 430 P.2d 497, 503 (1967).

*And see,* cases and treatises cited therein.

"It is important to note in *Diffendaffer* the Commission concluded *that the risk or hazard of travel* in that case was *an exposure occasioned by the employment,* and

the Commission, as well as this Court, is then seen as being properly aware that the inquiry was not for the existence of peculiarly dangerous highway conditions. In *Diffendaffer* observe this further ultimate finding:

'The evidence establishes that the Claimant's accident arose out of and was a necessary risk associated with his employment and the conditions, obligations and incidents of that employment. The Board finds and rules that the accident and resulting injury arose out of and in the course of his employment.' *Diffendaffer v. Clifton, supra,* 91 Idaho at 756, 430 P.2d at 502.

"In recent years, however, the holding of the *Jaynes* case has been stood on its head. The test of *'peculiar and abnormal exposure to a common peril'* has given way to something which looks and sounds like the same merchandise, but is not. The test now is that of *exposure to peculiar, abnormal and wholly uncommon peril. See, Harris v. William J. Burns Int. Detective Agency, Inc.,* 94 Idaho 440, 489 P.2d 1320 (1971); *Spanbauer v. Peter Kiewit Sons' Co.,* 93 Idaho 509, 465 P.2d 633 (1970); *In re South,* 91 Idaho 786, 430 P.2d 677 (1967).

"The Commission applied *Diffendaffer* to claimant's case in *Spanbauer v. Peter Kiewit Sons' Company, supra.* This Court, in what appears to be a complete flip-flop from *Diffendaffer,* reversed the Commission, saying that claimant there 'suffered his injuries while in an automobile accident on his way to work as might have any other person proceeding along that roadway that morning and thus the injuries respondent received were not compensable.' *Spanbauer v. Peter Kiewit Sons' Company,* 93 Idaho at 511, 465 P.2d at 635. Treating Spanbauer as a pure commuter, which he was not, the rationale of the case was that he could not recover under the *Jaynes* doctrine is quoted, correctly, for the truth of the doctrine, i.e., that the employment involves peculiar and abnormal exposure to a common peril."

*Clark, supra,* 98 Idaho at 116–20, 559 P.2d at 295–98 (emphasis added).

In *Barker v. Fischbach & Moore, Inc.,* 105 Idaho 108, 666 P.2d 635 (1983) (*Barker I*), the Court made clear that an additional exception to the "going and coming" rule exists. This exception applies where a claimant can show that his or her employer *intended* to compensate the employee for travel time. *Barker I, supra,* 105 Idaho at 110–11, 666 P.2d at 637–38. It was in this context that *Barker I* cited *Spanbauer* for the proposition that the mere payment of travel expenses is not conclusive evidence in and of itself of an employer's intent to compensate an employee for traveling to and from work. *Id.*

Where *Spanbauer* is also in error and should be overruled is in its analytical approach of imposing strict standards upon claimants by requiring them to show, in addition to their receiving travel allowances, extra evidence that their employer intended to compensate them for their travel to and from work. I especially find it hard to imagine what extra evidence would satisfy the Court in light of the facts of this case.

In *Barker I,* this Court cited 1 Larsen, *The Law of Worker's Compensation,* § 16.30 (1982), to state that there are two factors to consider when deciding if an employer intended to compensate an employee for his or her travel to and from work. These factors (in addition to evidence of the travel pay itself), are: (1) extended cross-country travel to reach the employment site; and (2) the size of the travel allowance paid. *Barker I, supra,* 105 Idaho at 110, 666 P.2d at 637.

In this case the claimant introduced evidence that a travel allowance has been paid. Therefore, to paraphrase the *Spanbauer* Court, we begin with the proposition that there is "some evidence that [Fischbach & Moore] regarded [decedent's] travel as part of his job. . . ." *Spanbauer, supra,* 93 Idaho at 510, 465 P.2d at 634. To satis-

fy the two *Larsen* factors cited to by the *Barker I* Court, claimant introduced evidence that decedent traveled approximately 534 miles to and from work each week,[7] and that the amount of travel paid by Fischbach & Moore to the decedent equaled 17 percent of his weekly wage.

If 534 miles per week to and from work, and a travel allowance equaling 17 percent of one's wages are not sufficient as a matter of law in proving that Fischbach & Moore did indeed intend to compensate decedent for his travel, then, rarely if ever, will *any* claimant be able to satisfy this Court's purported exception to the going and coming rule. The Commission, of course, is bound to take its cues from the Court—which is the ultimate arbiter as to the state of the law in Idaho. Other than for finding its *Spanbauer* award of compensation reversed by the Court in an opinion which did not deign to set forth the facts found by the Commission, there is little doubt in my mind but that the Commission would have awarded compensation in *Clark v. Morrine* and in this case. However, its hands are tied by *Spanbauer.* Accordingly, it is understood why the Commission in the first instance, and now a second time, feels constrained to say that there is "no evidence other than the actual [travel] payment itself, to indicate that the employer intended to compensate the employee for travel time or travel expense," notwithstanding that one of the two *Larsen* factors requires an analysis of the size of the travel allowance paid.

### III.

*Spanbauer's* analytical approach of requiring a high level of proof beyond the payment of travel expenses to enable a claimant to avoid application of the "going and coming" rule is incompatible with fundamental principles of worker's compensation law. *Hattenburg v. Blanks,* 98 Idaho 485, 567 P.2d 829 (1977) ("As this Court has held many times, the [Idaho Worker's Com-

---

7. During each work week, decedent stayed in Arco, which is approximately 26 miles one way from his work. He commuted home on week- ends to Twin Falls, which is 137 miles one way from his work.

pensation] Act is *to be construed liberally in favor of a claimant. The humane purposes which it seeks to serve leave no room for narrow, technical construction.*") (emphasis added, citations omitted). The *Larsen* factors mentioned by *Barker I* to satisfy *Spanbauer's* directive, and applied in this case, simply impose an insurmountable barrier for a claimant to overcome. If the factors are to continue to be applied as they are today, they render a claimant's application for benefits in cases such as this one a meaningless exercise in frustration and futility.

What this Court ought to do is alter its analytical approach and follow the majority rule, which is that in cases "involving a deliberate and substantial payment for the expense of travel ... the journey is held to be in the course of employment." *Larsen, supra,* at § 16.30. Such a rule is equitable, and as I shall show, easy to apply, and much more in harmony with present-day policies surrounding the employer-employee relationship.

The thrust of those cases cited by the majority, which I shall refer to below, is that the deciding factor for whether a person's going and coming from work is covered for worker's compensation purposes, is whether the travel allowance paid is an inducement to get employees to work at the employer's job site. If it is, then such travel is held to be compensable. *Larsen, supra,* at § 16.32, and cases cited therein. Thus, the analysis' focus is on the purpose for the travel allowance, with the size of such allowance in relation to the actual travel expense incurred the key factor—the larger the allowance in relation to the expenses resulting from such travel, the more likely the inference that an employer is paying the allowance with the intent of inducing the employee to work at its job site.

This is the result reached in *Ricciardi v. Aniero Concrete Co.,* 64 N.J. 60, 312 A.2d 139 (1973), where the New Jersey Supreme Court was presented with the following issue: assuming an identifiable sum is paid the employee for travel expenses relating to going and coming from work, how proportionately large must that sum be to support an inference that such travel is within the scope of employment? The court's answer was that the travel allowance must amount to all or substantially all of the travel expenses incurred. *Id.,* 312 A.2d at 141.

In *Ricciardi,* the claimant was injured while traveling from work. His travel allowance amounted to 40 percent of his commuting expenses. The court held this to be an inadequate amount to justify inferring that such travel was part of his employment, and, accordingly, denied him benefits. *Id.*

*Ricciardi* is sound law. It requires no delving by a factfinder into the subjective minds of each party, as *Spanbauer* and *Barker I* demand, to determine whether the travel in issue is intended to be or not be within the course of employment. Rather, it requires a simple mathematical calculation, which equitably determines when an employee's travel is covered by worker's compensation.

Applying the rule in *Ricciardi,* the Commission's decision here should be reversed. The facts reveal that the decedent was paid $90 for traveling approximately 534 miles to and from work each week. Depending upon the traveling expenses incurred by the decedent, his travel may have been part of his employment. If decedent's expenses were 18.7 cents per mile or less, which is quite feasible, the allowance paid by Fischbach & Moore would constitute approximately 90 percent or more of the decedent's expenses. I would hold this to be substantially compensating for all of his travel expenses, thereby making his travel covered under Idaho's Worker's Compensation Act.

Applying the rule in *Ricciardi* to the facts found in *Spanbauer* also reveals that the result reached in that case may have been correct. In *Spanbauer,* the claimant was traveling at least 500 miles a week to his job, and receiving $20 per week in travel allowances. Even assuming travel expenses of just eight cents per mile, claim-

ant's travel allowance would only cover one-half of his travel expenses. At five cents per mile, the travel allowance would still only cover 80 percent of his expenses. In either event, the allowance paid would not substantially cover all of claimant's expenses. Accordingly, the Court, even in light of this analysis, was correct in holding that claimant's travel was not within the scope of his employment. Thus, as pointed out above, the harm done in *Spanbauer,* and what makes it bad law, is not necessarily the result reached, but the *way* the result was reached.

Many other cases arrive at the result and employ a similar analysis to that which I propose. In *Westinghouse Electric Corp. v. Department of Labor,* 94 Wash.2d 875, 621 P.2d 147 (1980), the Washington Supreme Court unanimously held that where an employee's collective bargaining agreement calls for an employer to reimburse an employee for his travel to and from work at established amounts, dependent upon the miles traveled, such travel is within the employee's course of employment.

In *Degerstrom, Inc. v. Department of Labor,* 94 Wash.2d 875, 621 P.2d 147 (1980),[8] the Washington Supreme Court also unanimously invalidated a provision in a collective bargaining agreement, which stated that although travel expenses would be paid at established amounts, such travel to and from work should not be considered within the employee's course of employment. *Id.,* 621 P.2d at 148. The court stated that if an employee is within the course of employment, and his receipt of a substantial travel allowance in this case made his travel part of his employment, then any contract, agreement, or rule that attempted to preclude him from the benefits of Washington's Worker's Compensation Act would be held void. *Id.,* 621 P.2d at 150.

The result reached in *Degerstrom* is particularly important, for it reveals that the proper focus in determining whether an employee's travel is within the course of employment, is whether a substantial travel allowance is paid—not whether the parties subjectively did or did not intend the travel to be within the course of the employee's work.

Both *Westinghouse* and *Degerstrom* are nearly identical factually to this case. As in the above two cases, here, too, a collective bargaining agreement *required* Fischbach & Moore to pay decedent a substantial amount of his travel expenses. Therefore, under the reasoning of *Westinghouse* and *Degerstrom,* this Court should hold that decedent's travel was within the course of employment.

A less than exhaustive search reveals that the following cases are also in accord with that reached by the two Washington Supreme Court decisions: *Swasey's Case,* 8 Mass.App. 489, 395 N.E.2d 884 (1979) (where an employee's travel benefits employer, and employer reimburses employee for travel costs, an accident arising during the employee's travel is within the course of employment); *Matter of Willey,* 571 P.2d 248 (Wyo.1977) (where an employer paid its employee $12 per day for travel expenses to and from work, such travel is within the course of employment); *McMillen v. Arthur G. McKee & Co.,* 166 Mont. 400, 533 P.2d 1095 (1975) (where a collective bargaining agreement provides for a travel allowance to and from work, the employee is in fact paid such allowance, and the purpose of such allowance is to induce employees to take the job and travel to the work site, such travel is within the course of employment); *Haynes Guardian Security Bureau v. Jordan,* 520 P.2d 1050 (Colo.Ct.App.1974) (where employees are compensated for travel to and from work, such travel is within the course of employment); *Matter of Fisher v. Otis Elevator Co.,* 28 A.D.2d 598, 279 N.Y.S.2d 769 (N.Y. 1967), aff'd 22 N.Y.2d 665, 291 N.Y.S.2d 361, 238 N.E.2d 750 (1968) (where an employee's travel is financed at least indirect-

---

**8.** *Westinghouse, supra,* and *Degerstrom, supra,* involved similar issues. Although not consol-

idated, they were disposed of in one opinion.

ly by the employer, any accident arising from such travel is within the course of employment); *Williams v. Brunswick County Bd. of Education,* 1 N.C.App. 89, 160 S.E.2d 102 (1968) (where an employer covers the costs of transportation, an employee's travel is within the scope of employment); *Zenith National Ins. Co. v. Workmen's Compensation Appeals Bd.,* 66 Cal.2d 944, 59 Cal.Rptr. 622, 428 P.2d 606 (1967) (where an employee is paid $10 per day to induce an employee to accept employment at a job site 135 miles from home, such travel to and from the site is within the course of employment).

## IV.

Idaho's analytical approach to "going and coming" cases places it in the definite minority. Such is acceptable only if compelling reasons exist to support such an approach. I can think of none, however, and none are to be found in either *Barker I, supra,* or *Spanbauer, supra.*

On the contrary, compelling reasons exist in today's motorized society for not continuing to use the *Spanbauer* approach. The "going and coming" rule ought not to be allowed to become an impenetrable wall of immunity by which employers can enjoy the benefits of inducing employee to travel to far off work sites and yet avoid responsibility for accidental injury occurring from such travel. Said the California Supreme Court 15 years ago:

> There is a substantial benefit to an employer in one area to be permitted to reach out to a labor market in another area or to enlarge the available labor market by providing travel expenses and payment for travel time. It cannot be denied that the employer's reaching out to distant or larger labor markets increases the risk of injury in transportation. In other words, *the employer, having found it desirable in the interests of his enterprise to pay for travel time and for travel expenses and to go beyond the normal labor market or to have located his enterprise at a place remote from the labor market, should be required to pay for the risks inherent in his decision.* Hinman v. Westinghouse Electric Co., 2 Cal.3d 956, 88 Cal.Rptr. 188, 192, 471 P.2d 988, 992 (1970) (emphasis added).

## V.

For the foregoing reasons, I am unable to join the opinion for the Court, and am left wondering what it will take to influence three members of this Court to correct the prejudicial detriment continuing to be caused claimants by the *Spanbauer* case. The supposed *science* of jurisprudence is poorly served this day.

A few years ago some member of our profession, a district judge, if my memory serves me correctly, called my attention to the Law of Inverse Irreversibility. It was suggested that that law is especially applicable where on petition for rehearing it is irrefutably shown that a court or authoring justice thereof is in error. Because that law also seems applicable under today's circumstances, it is worthy of mention. Ralph Estling, writing for the weekly "New Scientist" of London, reprinted in *World Press Review,* April 1983, p. 36, explained how it works:

> Put in its simplest way, the principle of inverse irreversibility means that a scientist—or anyone else in the business of forming some general "law" by which the universe, or a large part of it, is governed—will view his law in inverse proportion to the amount and weight of evidence against it. A little evidence against it will cause agonies of doubt; moderate amounts will cause real concern and a pursing of lips; but irrefutable proof of his law's inaccuracy and untenability will cause the scientist to cling to it with the tenacity and single-mindedness of a barnacle.

Forsooth, it would seem that that principle is clearly being applied by those who comprise today's majority and tenaciously cleave to the *Spanbauer* presumption in favor of the surety and against the dead working man's widow. By reason of this Court's illfounded manufacturing of that

presumption, these are the *known* claimants who have already been penalized by it: Mrs. Spanbauer, whose award was reversed; Mrs. South, who was denied benefits by a Commission which now for fifteen years has been obliged to apply *Spanbauer;* and Mrs. Clark, whose claim was also denied on the basis of *Spanbauer.*

*Quaere:* Having backed away from today's opportunity to remedy the injustice created by its own error, how, then, if at all, does the Court propose to do so?

## APPENDIX

The facts of this case are set forth in detail in Case of *Barker v. Fischbach & Moore, Inc.,* 105 Idaho 108, 666 P.2d 635 (1983) (*Barker I*). The issue before us in *Barker I* was whether there was substantial and competent evidence in the record to support the Industrial Commission's conclusion that claimant's husband was not engaged in the course of employment when he died in a single-car accident.

In *Barker I,* we clarified the holding in *Spanbauer v. Peter Kiewit Sons' Co.,* 93 mand, *Barker v. Fischbach & Moore, Inc.,* "*Spanbauer* is to be read that the payment of travel expenses, *along with other evidence indicating the employer intended to compensate the employee for travel time,* will justify expanding the course of employment to include going to and from work." *Barker I, supra,* 105 Idaho at 110–11, 666 P.2d at 637–38 (emphasis added). We remanded the case to the Commission to determine if there was other evidence that, when included with the payment of travel expenses by the decedent's employer, would support a finding that the claimant's husband was within the course of employment at the time of his fatal accident.

The Commission concluded that there was no other evidence besides the payment of travel expenses to establish that Fischbach and Moore intended to compensate its employees for travel time.[1] The Commission held, therefore, that claimant's hus-

band was not in the course of employment when he died, and, accordingly, claimant is not entitled to benefits. Claimant again appeals the Commission's decision.

Our review of the record indicates that the Commission has correctly applied *Spanbauer* in reaching its conclusion. The determination that the decedent was not within the course and scope of employment at the time of the accident is a factual finding, and accordingly is binding upon us, provided that it is supported by substantial and competent evidence. ID. CONST. art 5, § 9; *In re Chavez,* 104 Idaho 279, 658 P.2d 950 (1983); I.C. § 72–732(1). Holding that substantial and competent evidence supports the Commission's finding, we affirm.

Costs to respondents, no attorney's fees.

---

1. The $18 per day travel allowance was paid to all employees pursuant to an applicable collective bargaining agreement regardless of how far they had to travel from home to work.